**MICREA, INC., and Jack Adler, Appellants,**

v.

**EUREKA LIFE INSURANCE COMPANY OF AMERICA, Appellee.**

No. 17686.

Court of Civil Appeals of Texas, Fort Worth.

Jan. 30, 1976.

Rehearing Denied Feb. 27, 1976.

Jon Mercer, Houston, for appellants.

Fillmore, Lambert, Farabee, Purtle & Lee, and Glynn Purtle, Wichita Falls, for appellee.

## OPINION

MASSEY, Chief Justice.

Eureka Life Insurance Company brought suit against Micrea, Incorporated, for deficiency indebtedness evidenced by note, aft-

er original indebtedness was credited with proceeds from sale of real estate under authority of a Deed of Trust. Said company likewise sued Jack Adler upon his contract of guaranty of the note obligation of Micrea. Micrea and Adler, by cross-action, sought to set aside and annul the sale by Trustee for a variety of reasons, and by additional cross-action Adler sued the company for damages on the theory that his contract provided for the payment of usurious interest.

Status of the case as so described resulted from consolidation of the suit by Eureka Life Insurance Company's suit in Wichita County, with the suit filed by Micrea and Adler in Brazoria County where there had been the sale by Trustee of the real estate securing the note.

Trial was before the court without a jury. Following hearing judgment was rendered for Eureka Life Insurance Company on the note, with denial of all the relief sought by Micrea, Inc. and Jack Adler who have brought an appeal.

Judgment affirmed as to Micrea, Incorporated; as to Jack Adler judgment is reformed by elimination of attorney's fee adjudged against him, and as reformed affirmed.

Not clear from the record is whether Micrea had existed as a corporation for some time, or whether it was formed for the purposes of the several transactions and occurrences which culminated in suit and judgment. In any event Micrea was a close corporation of which Jack Adler and his wife were the owners of the stock. There is not the contention that there exists any issue of whether such corporation was the *alter ego* of Adler, its president.

Some 46 acres of land in Brazoria County was apparently optioned to be purchased by Micrea in the early part of 1973. In order to consummate purchase of the land Micrea required a loan of approximately $168,-750.00. It found that Eureka Life Insurance Company of America was willing to loan the money on the following conditions:

(a) the indebtedness by loan should be evidenced by note and the note must be absolutely guaranteed by Adler as an individual, (b) the security for the indebtedness should be by first lien on the land to be purchased, secured further by Deed of Trust, (c) that the note should be for a full three year period for $168,750.00 with said amount delivered over to Micrea at the "closing" of the real estate purchase and financing transaction(s), (d) that Micrea should immediately and at time of "closing" make redelivery to the company of the sum of $10,-125.00 as "commitment fee" due from Micrea to the company as part of the consideration for making the loan and (e) that Adler should guarantee payment of the loan as "Guarantor."

The $10,125.00 "commitment fee" was not referred to as any part of the interest on the principal amount of $168,750.00. It is clear that it was not intended to be applied as interest. The note contract provided that it should be due and payable on or before three (3) years from its date with interest at the rate of ten per cent (10%) per annum on the $168,750.00, payable semi-annually as it accrued, beginning on or before November 1, 1973.

To all the foregoing Micrea agreed and executed instruments in accord, acting by and through Jack Adler, its President, on May 25, 1973. Upon receipt in hand of the $168,750.00, Micrea handed back to the agent of the company the agreed amount of $10,125.00. To the guaranty Adler agreed, as an individual, and at the same time he signed the $168,750.00 note as "Guarantor", he signed a separate instrument guaranteeing that in the event of default by Micrea he would be bound to pay the balance of any indebtedness owing to the company.

Developments anticipated by all parties failed to occur. Micrea made the interest payment due November 1, 1973 but nothing thereafter. By provisions of the note there was default by Micrea entitling the company to make its election to declare the whole of the indebtedness evidenced thereby as

due and payable, and accelerating the obligation of Micrea so that there would be a maturity thereof (because of the default) much earlier than the date of the expiration of the three-year term originally anticipated. It is agreed that the company did exactly this, plus exercising its right to proceed to cause the property to be sold under the provisions of the Deed of Trust. Following procedures necessarily antecedent to sale of this security by Trustee there was what Micrea and Adler contend was a mere purported, and in any event voidable sale to an agent for the company itself for the sum of $46,000.00.

With the ascertainment of the amount of credits to be made on the indebtedness of Micrea pursuant to the sale by Trustee, and by reason of Adler's guaranty of the remainder of the indebtedness, the company proceeded to institute action to make the deficiency, plus the ten per cent (10%) attorney's fee provided by the note contract. As indicated heretofore the judgment secured against Micrea is in all respects affirmed. However, since there was a distinction to be made in the burden of proof on the company's action against Adler, the allowance of identical amount as attorney's fee in the judgment against him was in excess of the amount shown by proof, and to the extent of such excess is reduced.

Necessarily must our affirmance depend upon our refusal to disturb the action and sale pursuant to the Deed of Trust of Micrea. The points of error bearing thereon by the cross-action of both Micrea and Adler are all overruled. In part in consideration thereof, and in part independently, the points contending error in the denial of Adler's individual claim for usury damages are denied.

Under the complaints made by the points of error we find nothing constituting reversible error by the foreclosure under the Deed of Trust, nor by the judgment for deficiency of the obligation by note plus attorney's fee for services of the company's attorney in the prosecution of its suit. We will discuss questions posed relative thereto at a later stage.

Initially we will discuss the suit by cross-action of Adler, the individual, for wrongful and usurious contract by his guaranty of the Micrea note obligation in the amount of $168,750.00.

Of course Adler's obligation to the company by guaranty "matured" so that liability attached upon failure of Micrea to meet its note obligation. In the instant case the exact date Adler's obligation "matured" is immaterial to determination of questions, and may for convenience be taken as September 30, 1974 when the company filed its suit against Adler and Micrea for deficiency of the obligation by note, plus attorney's fee.

To be noted in the description of the facts at the beginning of the opinion is that Micrea, in obtaining the $168,750.00 from the company, agreed to, and did, deliver back to the company the sum of $10,-125.00 as payment by it to the company as what is termed "points" or "commitment fee" due the company for making the loan. The $168,750.00 of the note provided on its face that it was to be repaid plus 10% accrued interest within three years. Micrea did receive the full amount, though simultaneously (or immediately) redelivering it over to the company. We may observe that the $10,125.00 was interest which should have been credited as such upon the interest calculated as owing on the note at time of the judgment. *Morris v. Miglicco,* 468 S.W.2d 517 (Houston, 14th Dist., Tex.Civ. App., 1971, writ ref., n. r. e.). In any event it was paid by Micrea, a corporation. That Micrea might be deemed to have been obliged to pay (as result of the payment of the $10,125.00) approximately 12% interest rather than the 10% provided on the face of the note was, as to it, immaterial. This is so because Micrea was at liberty to pay, or contract with the company to pay, up to 18% interest for the use of a lender's money. V.À.T.S. Title 32, "Corporations", Art. 1302–2.09. *"Authority of certain corporations to borrow money."*

By V.A.T.S. Title 79, "Interest", Art. 5069–1.02, "Maximum rates of interest", ten per cent (10%) per annum is the maximum rate of interest where not otherwise authorized by Texas statute. If the company's loan had been to Adler rather than to Micrea such would have been the maximum permitted to be contracted or collected without the taint of usury.

By Art. 5069–1.06, "Penalties", under the same Title, there is provision that "Any person who contracts for, charges or receives interest which is greater than the amount authorized . . . shall forfeit to the obligor twice the amount of interest contracted for, charged or received, and reasonable attorney fees fixed by the court provided that there shall be no penalty for a violation which results from an accidental and bona fide error".

It is by this statutory provision that Adler contends upon his individual cross-action for double the amount of the interest provided in the note as a penalty. In making the contention Adler seeks to have the $10,125.00 paid by Micrea as "points" or "commitment fee" treated as part of the interest contracted. In other words Adler desires a construction of the entire transaction as one where by a contract between himself and the company there had been contract for him to pay interest greater than the amount authorized by law.

Understandable is that at no stage of the proceeding did either Micrea or Adler seek to have the $10,125.00 (delivered back to the company) treated as "interest paid" on the $168,750.00 note figure and credited upon the amount declared upon the company's suit for deficiency judgment. For Adler to make the contention would be to waive his attempt to have the contract, as to him, declared usurious. The $10,125.00 was paid by Micrea, not by Adler. Adler's contract to pay was effective and operative only upon the occurrence of a condition precedent. In any event the trial court was entitled to treat the $10,125.00 as having been paid by Micrea and not Adler.

Nothing in the evidence proves anything fraudulent by the company's loan of the money, or that it was in fact a loan to Adler with the language of the contract(s) actually fictional in statements that the loan was to Micrea. The same applies to the manner by which the $10,125.00 was delivered over to Micrea, and instantly re-delivered by it to the company as for some consideration other than interest for which credit should be given.

The State has no law which affords Adler a cause of action by reason of the transaction(s) here involved. Our statutes relative to penalty are to be enforced strictly in accordance with their terms. Rights of redress provided thereby are therefore to be restricted to those who are original parties to the usurious contract. One who has not himself paid usurious interest and whose individual contract with a lender, in relation to a loan made to another, does not provide for usurious interest may not avoid liability on the ground that usurious interest was paid by the principal debtor, the defense of usury or right of action growing out of the contract providing therefor or actual collection of usurious interest being purely personal to the borrower for whose protection the statutes were enacted. Of course there might be a right to question a usurious contract by one in privity with the borrower, but if so he is obliged to show that it is based upon and derivative from the borrower's right. The foregoing is more or less "Hornbook Law". The subject is written upon in 91 C.J.S. Usury §§ 71, 132, 151, and 153, p. 648, et seq.

Adler's signature on the face of the note was stated thereon to have been as "Guarantor". A separate contract of guaranty spelled out the individual obligation assumed to the company by Adler as such. Therein Adler promised that if there was default on the note obligation of Micrea he would, on demand, pay the balance owing by Micrea plus "any and all indebtedness and the expenses incurred by the payee

. . . expended to collect said note or to protect its security including . . . the payment of attorney's fees, ad valorem taxes and insurance premiums." Therein Adler further expressly agreed that the company might surrender, release, etc. the collateral or other security held by it for the note and obligation guaranteed. Obviously this provision had application to the realty covered by the Deed of Trusts.

■ By suit of September 30, 1974 the company, as was its right, elected to charge Adler upon his contract as "Guarantor". Thereby it "declared" in a manner which made operative and enforceable Adler's contract obligations, dependent upon conditions precedent. The conditions precedent lay in the failure of Micrea, as the primary obligor on the note, to make the payments thereby prescribed. Only upon such failure by Micrea was the company entitled to exercise its right of election and demand payment by Adler as an individual.

By reason of all the foregoing our holding is that Adler has failed to prove his cross-action for usury. Among those we consider that Adler, by not insisting that the note be credited with the $10,125.00 when to make the credit would operate to reduce the interest owed by Micrea to 10% and thus enure to his own benefit by reducing the indebtedness guaranteed, has consented to its payment being treated to have been paid as for some other consideration by Micrea.

The Legislature has not seen fit to enact legislation which would afford Adler any right to collect damages because of any usury in a contract of guaranty such as that to which he agreed in this instance. His individual contract does not qualify as one where as a primary obligor he could be treated as having contracted to pay interest above 10% per annum upon the effectiveness of his agreement (as the result of Micrea's default of payment and the payee's election to declare him liable upon his contract of guaranty). Adler has not cited any case which shows the contrary, nor has he made demonstrable construction of any existent statute which could operate to make a cause of action for usury avail to him.

The remainder of the opinion will generally relate to complaints of the manner by which purported foreclosure under Micrea's Deed of Trust was effected. Micrea and Adler seek to have the Trustee's sale set aside so that there must be new proceedings and another sale for a new amount as credit to be applied upon the note. On the subject reference is made to 39 Tex.Jur.2d, the entire chapter on "Mortgages and Trust Deeds." See also 9 Tex.Jur.2d, p. 329, et seq. on "Bills and Notes", Secs. 302, 304, 306 and 345. These sections discuss applicable provisions of the Texas Uniform Commercial Code.

We take occasion to observe, initially, that there was evidence of sufficient probative force and effect to establish the right, plus undisputed evidence that the company did elect to and did declare the note accelerated and payable in full as wholly mature. Suit thereon, credit given to the proceeds of the Trustee's sale, etc., resulted in the company declaring upon a cause of action for deficiency upon the note, after proper credits. The decision of the trial court was that it should render judgment for $160,132.77, inclusive of the amount of $13,974.37 as attorney's fee against both Micrea and Adler. The allowance as attorney's fee matched the finding of the trial court that the deficiency in the obligation by note and by guaranty contract, plus added obligation to pay expenses, etc. was $139,743.75. There was interest which accrued since November, 1973 when interest for five months was paid. There was also the undisputed fact that Micrea's contract by note provided for 10% thereof as attorney's fee. The court's finding of fact No. 8 was that such amount was a reasonable fee for the company's attorney for services in the case.

■ For convenience we will first consider the complaints relative to the attorney's fee. Micrea plead, and in view of the contractual provisions of the note and guar-

anty contract it was its burden to establish by proof, that a lesser amount than the 10% contracted should be adjudged as the proper attorney's fee allowable against it in the case. That Micrea could properly make the claim is established by *Kuper v. Schmidt*, 161 Tex. 189, 338 S.W.2d 948, 950 (1960). Such case is furthermore authority for the following: "The usual attorney's fee clause is, however, in the nature of a contract of indemnity and cannot be regarded as providing for liquidated damages or a penalty. Upon a proper showing the holder will be limited to an amount which is reasonable under the circumstances, and may be denied any recovery where it appears that no expense has been incurred as a result of the maker's default. (Citing cases.)"

■ It was the burden of Micrea to show the fact and obtain a fact finding that a reasonable attorney's fee was not as great as the 10% contracted, and the amount to which the allowable attorney's fee should be reduced. Unless the reduction be compelled by the force of the evidence admitted and of record for the purpose the trial court was free to find that there had been failure by Micrea in discharge of the burden of proof, and for that reason decline to reduce the amount below that contracted. That, in effect, is what was done by the trial court, sitting as the fact finder. By its finding of fact No. 8 it found the $13,974.37 was reasonable attorney's fee. (By Micrea's posture in the case in that its burden was to prove and obtain finding to the contrary, there would be the necessarily included presumed finding that Micrea's proof failed to establish that it was excessive by any amount.) We observe, furthermore, that the evidence tendered on trial to discharge the burden of Micrea upon the matter of reasonable attorney's fee was excluded by the trial court. The exclusion may have been error but that is not a question we are required to consider. There is no point of error complaining of the exclusion of any evidence. By bill of exception the evidence of Micrea upon the issue was shown and the fact that it was tendered, with tender re-

fused by the court, likewise shown. (Indeed, in the evidence on making the bill of exceptions there was evidence of reasonable attorney's fee both Micrea and Adler sought to prove as necessary to be expended in making the note collection.) This was no part of evidence proper to be considered in rendition of judgment for it was excluded.

The circumstances might have warranted presentation of complaint of the exclusion by point of error, but there is no point of error which makes the complaint. Upon T.R.C.P. 418, "Briefs: Contents", the Supreme Court wrote in *Fambrough v. Wagley*, 140 Tex. 577, 169 S.W.2d 478, 482 (1943), and among other holding was that a point of error on appeal might be complete within itself in the sense that it must, on its face (including the argument under the point) show that the matter complained of presents reversible error.

■ However, as applied to Adler and under the Adler contract of guaranty the burden of proof was upon the company to establish the amount of expenses as attorney's fee as prerequisite to entitlement therefore against Adler. These were expenses incurred or expended, necessarily, in collection of the note to which Adler's guaranty applied. In other words though Micrea had contracted to pay 10% as attorney's fee Adler, by his guaranty, had merely contracted to pay such a fee as was necessarily incurred by the company. On this there was no evidence of record. Therefore the company waived the right to recover attorney's fee from Adler. Adler's points of error raise the question and we hold that the trial court erred in the award of $13,974.37 as attorney's fee against Adler.

In relation to the fault in the proceedings relative of foreclosure on the security by Deed of Trust. Micrea and Adler seek by their brief to demonstrate impropriety by the case of *Lockwood v. Lisby*, 476 S.W.2d 871 (Fort Worth, Tex.Civ.App., 1972, writ ref., n. r. e.), a prior opinion by this court.

Quoted therefrom (p. 873) was the following: "Our concern in this case is related to 'notice' as applied to a prerequisite contractual condition (by construction) upon which right to conduct any trustee's sale is made to depend. Specifically, we are concerned with 'notice of intention to accelerate, or of acceleration, of obligation to pay an indebtedness evidenced by note.' This 'notice' is to be distinguished from a 'notice of trustee's sale', a different albeit an associated transaction in that authority to conduct the sale depends not only upon regularity of the notice of sale but also upon propriety and validity of the antecedent notice of acceleration of payments due as evidenced by note. It was because of the *unexcused want of 'notice'* relative to such an acceleration that the trial court rendered judgment in this case." (Emphasis was in the opinion.) The parties also cite *Crow v. Heath*, 516 S.W.2d 225 (Corpus Christi, Tex.Civ.App., 1974, writ ref., n. r. e.), a case in which consideration was given similar questions relative to sale under a deed of trust. In that case it was written, ". . . where the mortgagee seeks a deficiency judgment outside of judicial foreclosure, the sale by such power must stand strict scrutiny."

In the instant case there was not presented the questions passed upon in *Lockwood v. Lisby*, supra. That is so because there has been, in the instant case, a "waiver" by the contracts of both Micrea and Adler. Micrea's waiver is to be found in the note and Deed of Trust. Adler's waiver is to be found in the note, which he signed as "Guarantor" and in the separate guaranty contract. The court, furthermore, found such waivers by its findings and conclusions in the case. By reason of the waivers in this case there was not reversibility in want of notices which otherwise might be said to have rendered foreclosure under the Deed of Trust improper. *Phillips v. Whiteside*, 426 S.W.2d 350 (Houston 14th Dist., Tex.Civ.App., 1968, no writ history); *Bazile v. Tamborello*, 442 S.W.2d 923 (Houston 14th Dist., Tex.Civ.App., 1969, no writ history). That there might be equitable as well as contractual waiver is recognized in *Allen Sales & Servicenter, Inc. v. Ryan*, 525 S.W.2d 863 (Tex.Sup., 1975).

Even if the complaints presented were not contractually waived, we find that the pleadings of Micrea and Adler fail to raise the issue of absence of notice of acceleration of the note before suit was filed. By one question and answer in the record there is testimony from Adler, apparently in his individual capacity, that "he" did not receive any notice of acceleration. This being part of an unplead affirmative defense there is some doubt that it constituted an issue tried without objection so that no formal proceedings were necessary. T.R.C.P. 279, "Submission of Issues". In any event it would be an issue upon which Micrea and Adler would necessarily bear the burden of proof. The court's finding was against them in respect hereinabove noticed. Neither Micrea nor Adler sought additional findings and conclusions to those originally filed and there were none. Certainly, therefore, they are without any finding availing them benefit. T.R. C.P. 299, "Omitted Findings". The failure to request additional findings which would cover this as an element of defense for Micrea and Adler, no element thereof having elsewhere been found, constitutes its waiver as a defense. *McKenzie v. Carte*, 385 S.W.2d 520, 529 (Corpus Christi, Tex. Civ.App., 1964, writ ref., n. r. e.). See also McDonald Texas Civil Practice, "Nonjury Trial", Vol. 4, Sec. 16.09, "Omitted Findings".

The first complaint of irregularity in the proceedings to foreclose under provisions of the Deed of Trust came after the sale had been completed and deed delivered by the Trustee. Under the circumstances regularity is presumed. The burden of proof was upon Micrea and Adler by reason of their claim of irregularity. They sought to set aside a completed sale pursuant to which title was acquired by the company. An interest of a third party has not arisen. Generally, the complaint is that though

there was posting of notice of the sale to be held on September 3, 1974 at the door of the courthouse in Brazoria County there was not proof that there was posting at two other public places in the county; that the sale, if in fact conducted, did not take place at the south and main door of the courthouse, but at another and different door whereby there was not proper compliance that sale be at the "courthouse door"; and that there was gross inadequacy in the $46,-000.00 price for which the property was sold, whereby the rules of equity would require vacation and annulment of the sale upon timely application.

■■■■ Mere inadequacy in the amount for which property was sold is not sufficient reason to annul a sale made by authority of a Deed of Trust. There must be accompanying irregularities in the sale, at least slight irregularities. *Pantaze v. Slocum*, 518 S.W.2d 407 (Fort Worth, Tex.Civ.App., 1974, writ ref., n. r. e.); *Crow v. Heath*, 516 S.W.2d 225 (Corpus Christi, Tex.Civ.App., 1974, writ ref., n. r. e.). Evidence in this case included proof, obviously believed, concerning efforts made by the Trustee to interest prospective purchasers through advertisements; coupled with proof that Micrea and Adler had actual adequate notice sufficiently in advance of the sale to afford opportunity to seek to interest prospective buyers who might bid up the price for which the property was sold and thereby reduce the deficiency in indebtedness owing. Clearly established is that the sale was one where there was mere inadequacy of price. But irregularity in the sale was not established. To do this was the burden of Micrea and Adler.

■■■ It was shown that the Trustee enlisted the services of the sheriff of Brazoria County to post the three required notices. The Trustee testified on trial that he employed and paid the sheriff for such services, and saw the posted notice at the bulletin board provided for the purpose just inside the door of the courthouse; that of his own independent knowledge he does not know the location of any other of the two public places of posting nor of actual posting. Of course the sheriff would be the person with knowledge. He did not testify. On the question of whether the sale was at the proper "courthouse door" the Trustee made inquiry upon arriving at the Brazoria County Courthouse as the proper door customarily used for conducting trustee's sales, that he was directed by the sheriff to the east door as the proper location, and that thereat the sale was conducted. In general the "Courthouse Door" is either of the (several) entrances to the building provided for the holding of the district court. T.R.C.P. 648, " 'Courthouse Door' Defined." The evidence of the Trustee was that he conducted the sale, and that it was done at the east door to the Brazoria County Courthouse. Noted is that Adler was at the courthouse, but at the south door. He did not, however, have anyone with him who intended to bid on the property to be sold; he was merely present out of interest in learning the amount for which the property was sold. Encountering the Trustee immediately after the sale he made no protest.

■■■ On the subject matter of the foregoing paragraph, among other matters which are important is that relating to the proper placement of the burden of proof. By the testimony of the Trustee who conducted the sale, it became necessary for Micrea and Adler, in the support of their contentions of irregularity, to at least go forward in the presentation of evidence so that they might be entitled to obtain findings either that there was failure in respect to proper posting, a failure to prove any actual sale, or a failure to conduct the sale at the proper place, to wit: the "official or recognized courthouse door". Indeed *Tarrant Savings Association v. Lucky Homes, Inc.*, 390 S.W.2d 473 (Tex.Sup., 1965) holds that the burden is defensive and that it is one who would defeat right of a plaintiff to recover for deficiency following a sale by Trustee who is obliged to discharge the burden of proof. Absent such proof, he might be held to have failed to show legal

or equitable reason to invalidate the sale and have the same set aside. With such evidence, if such failed to establish his claims, or any of them, by a preponderance of the evidence, according to the fact finder, he would not be entitled to have the sale annulled. That is exactly the condition in which the trial court found Micrea and Adler. We cannot say that the court erred.

All points of error are overruled save that under which we reverse the judgment against Adler, as an individual, the amount of $13,974.37 as attorney's fees. This means that the entire judgment is reformed so as to read as follows: It is, therefore, accordingly ORDERED, ADJUDGED and DECREED that Plaintiff Eureka Life Insurance Company of America be and it is hereby awarded judgment against defendants, Micrea, Inc. and Jack Adler, jointly and severally in the sum of $146,158.40, and that in addition thereto is hereby awarded judgment against Micrea, Inc. in the additional sum of $13,974.37 as attorney's fee.

Costs of appeal are adjudged to the extent of 50% as against both Micrea and Adler jointly and severally; the remaining 50% of the amount of such costs are adjudged against Micrea.

## ON MOTION FOR REHEARING

All parties have filed motions for rehearing. Of these we find merit in certain presentation made in the motion for rehearing by Eureka Life Insurance Company of America, but not in the motion of Micrea, Inc., and Jack Adler.

To correct both our opinion and judgment in the case there is need to amend the judgment of the trial court so as to reform it to read other than as stated by our original opinion and judgment, which is further reformed and correctly stated below.

The judgment of the trial court is reformed so as to read as follows: It is, therefore, accordingly ORDERED, ADJUDGED AND DECREED that Plaintiff Eureka Life Insurance Company of America be and it is hereby awarded judgment

against defendants, Micrea, Inc., and Jack Adler, jointly and severally, in the sum of $146,158.40, with interest thereon at the rate of ten per cent per annum from date of April 10, 1975, until paid; and that in addition thereto is hereby awarded judgment against Micrea, Inc., in the additional sum of $13,974.37 as attorney's fee, with interest thereon from April 10, 1975, to September 1, 1975, at the rate of six per cent per annum and beginning September 1, 1975, at the rate of nine per cent per annum until paid, by V.A.T.S., Art. 5069–1.05, "Rate of Judgments".