John CIMINELLI, Appellant,

v.

FORD MOTOR CREDIT COMPANY and
Tradewinds Ford Sales, Inc., Appellees.

No. 1720.

Court of Civil Appeals of Texas,
Corpus Christi.

Feb. 12, 1981.

Rehearing Denied March 5, 1981.

Marcel S. Greenia, Corpus Christi, for appellant.

Rick Rogers, Porter, Gonzalez & Rogers, Corpus Christi, Randall A. Hopkins, Baker & Botts, Houston, Andrew J. Lehrman, Sorrell, Anderson & Sorrell, Corpus Christi, for appellees.

## OPINION

BISSETT, Justice.

This is an appeal by John Ciminelli, plaintiff in the trial court, from a summary judgment in favor of Ford Motor Credit Company and Tradewinds Ford Sales, Inc., defendants in the trial court, and from an order which sustained the defendants' pleas in abatement, on claims made by plaintiff under the Texas Consumer Credit Code, Tex.Rev.Civ.Stat.Ann. art. 5069–2.01 et seq. (1971), hereinafter referred to as the "Credit Code."

Plaintiffs John Ciminelli and Reyes Gonzales sued on two theories. First, they alleged and contended that the transaction made the basis of this suit was a "retail installment transaction" within the provisions of Chapter 14 (Art. 5069–14.01–14.28) of the Credit Code. Second, they alleged a

cause of action under Chapter 7 of the Credit Code. The actions will hereafter be referred to as the "Chapter 7 action" and the "Chapter 14 action," respectively.

The trial court, prior to the signing of the summary judgment and the order which sustained the pleas in abatement dismissed plaintiffs' Chapter 14 action, struck all of the pleadings by the plaintiff Gonzales and dismissed him from the case. Gonzales did not complain of that action and is not an appellant in this appeal. Ciminelli appeals from both the summary judgment and the order granting the pleas in abatement. We affirm.

On November 1, 1977, Gonzales purchased a used 1972 Cadillac from Tradewinds Ford Sales, Inc. Immediately preceding the date of purchase, Gonzales requested that Ciminelli, his employer, co-sign the contract in order for him to buy the automobile on credit. Ciminelli consented and signed a contract, whose blanks had not been filled in by the salesman, Gonzales, or anyone else. Subsequently, Gonzales and the salesman worked out a purchase for a total deferred payment price of $4,567.52, and filled in the blanks in the contract.

Shortly thereafter, Gonzales defaulted in his payments and the automobile was repossessed. Ciminelli attempted to satisfy the payments under the note and take possession of the car, but was unable to do so since the title was in the name of Gonzales.

We first address plaintiff's second point of error, wherein he contends that the trial court erred in granting the defendants' pleas in abatement and in dismissing his cause of action under Chapter 14 of the Credit Code, because the repeal of Chapter 14 (Art. 5069–14.01 to 14.28) of the Credit Code by the 66th Legislature did not destroy his cause of action. The point cannot be sustained.

■ The original petition in this case was filed on July 7, 1978. Ciminelli became a plaintiff on October 11, 1978, when plaintiffs' first amended petition was filed. The repeal of Chapter 14 of Credit Code became effective on August 27, 1979. The order granting defendants' pleas in abatement and dismissing plaintiff Ciminelli's Chapter 14 action was signed on February 20, 1980. The Act which repealed Chapter 14 did not contain a savings clause pertaining to pending suits.

In *Dickson v. Navarro County Levee Imp. Dist. No. 3*, 135 Tex. 95, 139 S.W.2d 257, 259 (Sup.1940), the Court stated:

"It is almost universally recognized that if a statute giving a special remedy is repealed, without a saving clause in favor of pending suits, all suits must stop where the repeal finds them; and, if final relief has not been granted before the repeal goes into effect, it cannot be granted thereafter. A like general rule is that if a right to recover depends entirely upon a statute, its repeal deprives the court of jurisdiction over the subject matter."

Also relevant to the disposition of plaintiff's second point is the language in the opinion of *National Carloading Corp. v. Phoenix-El Paso Express*, 142 Tex. 141, 176 S.W.2d 564, 570 (1943), to wit:

"If, before rights become vested in particular individuals, the convenience of the State induces amendment or repeal of the laws upon which they are based, these individuals are left without any remedy at law to enforce their claims; *and if final relief has not been granted before the repeal goes into effect it cannot be granted thereafter, even if a judgment has been entered and the cause is pending upon appeal.*" (Emphasis supplied.)

Applying the rules set forth in *Dickson* and *National Carloading Corp.*, supra, we are of the opinion that the repeal of Chapter 14, without a savings clause, effectively destroyed any claim in which final relief had not been granted by August 27, 1979. The cause of action in the present case, therefore, cannot be maintained under Chapter 14 of the Credit Code. Plaintiff Ciminelli's second point of error is overruled.

Concerning plaintiff's first point of error, it is asserted that the trial court erred in granting the motion for summary judgment

since appellant did have standing to maintain his cause of action as a "retail buyer" under Chapter 7 of the Credit Code. "Retail Buyer" is defined in the Credit Code in Article 5069–7.01(b) as follows:

> " 'Retail Buyer' or 'Buyer' means a person who agrees to buy or buys a motor vehicle other than principally for the purpose of resale, from a retail seller in a retail installment transaction."

The instant case is very similar to *Hensley v. Lubbock National Bank*, 561 S.W.2d 885 (Tex.Civ.App.—Amarillo 1978, no writ), where Hensley purchased two vehicles for a third party, Hill, because the latter could not secure credit independently. The Court stated:

> "Hensley's declaration that his purpose in entering into the transaction was to help Hill out is clarified by his testimony establishing that the true purpose of the transaction was to effect a sale of the motor vehicles to Hill, who could not secure credit to purchase them in his own name. The method employed was a sale to Hensley with the understanding that the vehicles actually were bought by Hill, who could become the owner only through a resale by, or a gift from, Hensley. There is no testimony or inference of an intended gift. Instead, Hensley's testimony is that Hill, not Hensley, used the motor vehicles; Hill, not Hensley, was to make the payments; and when Hill made the payments, Hensley was to transfer the titles to Hill in order to achieve the object of the primary transaction, which, in law, would consummate a resale. It, therefore, is inescapable that Hensley, who did not even read the instrument he signed, bought the vehicles principally for the purpose of resale to Hill, and, thereby, he was not a 'retail buyer' or a 'buyer' within the meaning of Chapter 7 of the Texas Consumer Credit Code . . . ."

■ Like Hensley in the above-cited case, Ciminelli's role in the transaction was to ensure that Gonzales could purchase an automobile on credit. Ciminelli did not read the contract he signed; Ciminelli did not take part in deciding which car to buy; all such decisions were made solely by Gonzales. When Gonzales defaulted in his payments, Ciminelli tried to pay off the note and take possession of the car, but was unable to do so because title was in the name of Gonzales. It would be illogical to denominate Ciminelli a "buyer" of the vehicle under the record.

■ Ciminelli's role in the transaction is that of a "guarantor" not that of a "buyer." A guaranty is an undertaking by one person to be answerable for the payment of some debt or the performance of some contract or duty by another person, who himself remains liable. *Wood v. Canfield Paper Company*, 117 Tex. 399, 5 S.W.2d 748 (1928, opinion adopted); *Coleman Furniture Corp. v. Lieurance*, 405 S.W.2d 646 (Tex.Civ.App.—Amarillo 1966, writ ref'd n. r. e.). As to whether a person is a guarantor or a buyer, the nature of the obligation, not the words used, determines the status. *Wood v. Canfield Paper Company*, supra; *Texas Tractor Co. v. Texas Power & Light Co.*, 412 S.W.2d 935 (Tex.Civ.App.—Waco 1967, no writ).

The purpose of securing Ciminelli's signature on the contract was to insure payment of the note if Gonzales, the primary obligor, defaulted. Ciminelli does not qualify as a "retail buyer" under Chapter 7 of the Credit Code and cannot maintain a suit thereunder. Plaintiff Ciminelli's first point of error is overruled.

The judgment of the trial court is AFFIRMED.