John CIMINELLI, Petitioner,

v.

FORD MOTOR CREDIT COMPANY et al., Respondents.

No. C–253.

Supreme Court of Texas.

Dec. 9, 1981.

Marcel S. Greenia, Corpus Christi, for petitioner.

Baker & Botts, Randall A. Hopkins and Lee H. Gudel, Houston, Porter, Gonzalez & Rogers, Fredrick F. Rogers, Jr., Corpus Christi, Sorrell, Anderson & Sorrell, Andrew J. Lehrman, Corpus Christi, for respondents.

POPE, Justice.

Reyes Gonzales and John Ciminelli brought suit against Ford Motor Credit

Company, hereinafter called Ford Credit, and Tradewinds Ford Sales, Inc., hereinafter called Tradewinds, for violating provisions of Chapters 7 and 14 of Texas' consumer credit laws and for penalties under Chapter 8 of the laws.[1] Because Gonzales failed to appear at his deposition, the trial court granted Ford Credit's and Tradewinds' motion to impose sanctions upon him by striking his pleadings from the record and by dismissing his suit. *See* Tex.R.Civ. Pro. 170, 215a(b). Ford Credit and Tradewinds thereafter moved for summary judgment against Ciminelli upon grounds that he had no standing to sue as a "Retail Buyer" or "Buyer" under article 5069–7.-01(b), Tex.Rev.Civ.Stat.Ann. The trial court granted defendants' motion for summary judgment against Ciminelli, and the court of civil appeals affirmed the judgment.[2] 612 S.W.2d 671. The question presented is whether Ciminelli had standing to sue as a "Buyer" or a "Retail Buyer." We hold that he did. We reverse the judgments of the courts below and remand the cause to the trial court.

Reyes Gonzales during the fall of 1977 wanted to replace his 1964 Ford automobile with a newer car. His employer, Ciminelli, agreed to help him purchase the automobile from Tradewinds. Ciminelli went to Tradewinds' offices and spoke with Mr. Eddie de los Santos about the transaction. De los Santos directed Ciminelli to sign a series of papers and indicated to Ciminelli where he should sign.

Ciminelli signed the instrument titled "Texas Automobile Retail Instalment Contract" as a co-buyer. The first part of the contract contained spaces for the names and addresses of the buyer (and co-buyer), and only Reyes Gonzales' name and address were typed in the blank space. Immediately under these blanks appeared the following printed statement:

> Buyer (which means the undersigned Buyers and Co-buyers, jointly and severally) having been quoted both a deferred payment price and a lesser cash price hereby purchases from Seller on a deferred payment price basis, upon the terms and conditions set forth on the face and reverse sides hereof, the following property (hereinafter called the "Property") delivery and acceptance of which in good order are acknowledged by Buyer.

The contract then included descriptions of the automobile, trade-in vehicle, optional insurance, and other details of the transaction (*e.g.*, cash price of the car, unpaid balance, finance charge, annual percentage rate, payment schedule, and deferred payment price). In addition, terms relating to use of the vehicle and default appeared in the contract and stated the buyer's obligations. Gonzales signed his name on the line denoted, "Buyer signs", and Ciminelli signed on the line denoted, "Co-Buyer signs." It is significant that Ciminelli contracted as a co-buyer and as such, had all of the obligations of a buyer. We also regard as significant the fact that the contract had a separate section that was titled "Guaranty" with a blank space for a signature of a guarantor. That blank space was left unsigned.

1. Title 79, Interest—Consumer Credit—Consumer Protection, consists of Tex.Rev.Civ.Stat. Ann. arts. 5069–1.01 to 5069–51.19. The title is broken down according to subject matter into chapters. Chapter 7, the Motor Vehicle Installment Sales provisions, governs the sale of motor vehicles in retail installment transactions. Tex.Rev.Civ.Stat.Ann. arts. 5069–7.01 to 5069–7.10. Chapter 14, repealed in 1979, dealt with alternative disclosure requirements in coordination with federal law. Chapter 8 contains penalty provisions for violations of Texas' consumer credit laws. Tex.Rev.Civ.Stat.Ann. arts. 5069–8.01 to 5069–8.06.

2. The court of civil appeals also held that the action could not be maintained under Chapter 14 of the consumer credit statutes. According to the court of civil appeals, the repeal of Chapter 14 without a savings clause effectively destroyed any claim in which final relief had not been granted by August 27, 1979. 612 S.W.2d at 672. Ciminelli failed to raise this matter in his motion for rehearing before the court of civil appeals, and, thus, waived any error the court of civil appeals might have made in so holding. *Oil Field Haulers Ass'n v. Railroad Comm'n*, 381 S.W.2d 183, 189 (Tex.1964); Tex. R.Civ.Pro. 458, 469(e). Accordingly, we express no opinion on the point in this cause.

After Gonzales signed the papers completing the purchase, he took possession of and title to the automobile. Gonzales, however, failed to make any payments on the car, and Ciminelli explained at his deposition that he would pay Tradewinds and deduct that amount from Gonzales' wages. Ciminelli paid at least three of the installments in this manner.

Several months after the purchase, Ford Credit representatives informed Ciminelli that Gonzales had fallen behind on the payments and that they could not locate him or the car. Ciminelli explained that Gonzales no longer worked for him, but gave Ford Credit Gonzales' address and phone number. Ford Credit representatives called Ciminelli again three weeks later and informed him that they still had not located Gonzales. After the conversation, Ciminelli went to Gonzales' address and found him and the car. Ciminelli told Gonzales that he was going to take the car, and Gonzales did not protest. Ciminelli towed the car to Ford Credit's office. Speaking with Ford Credit representatives a few days later, Ciminelli offered to pay Ford Credit the balance due on the car in exchange for the automobile, but did not tender the amount. Ford Credit refused the offer because Gonzales held title to the vehicle.

Ciminelli then instituted this suit complaining that Tradewinds and Ford Credit had violated articles 5069–7.03(1), –7.06(3), –7.07(1), and 5069–14.17(4) and asking for penalties and attorney fees under articles 5069–8.01, –8.02, and 5069–14.19(i).

Chapter 7 of Texas' consumer credit laws regulates credit transactions between a "Retail Buyer" or "Buyer" of a motor vehicle on one hand, and, on the other, a "Seller" of the vehicle or "Holder" of the installment contract. To qualify for the protections afforded under the statutes, a person must be a "Retail Buyer" or "Buyer." The statute defines those terms as follows:

> "Retail Buyer" or "Buyer" means a person who agrees to buy or buys a motor vehicle other than principally for the pur-

pose of resale, from a retail seller in a retail installment transaction.

Tex.Rev.Civ.Stat.Ann. art. 5069–7.01(b). In determining the meaning of "buy" or "buys" as contained in article 5069–7.01(b), this court will give the words their usual and ordinary meaning. *National Life Co. v. Stegall*, 140 Tex. 554, 559, 169 S.W.2d 155, 157 (1943).

Webster's New International Dictionary (2d ed. unabridged) defines "buy" as "To acquire (property) by giving an accepted price or consideration therefor, or by agreeing to do so." To qualify as a "Retail Buyer" or "Buyer" under the statute, Ciminelli must have acquired or agreed to acquire a motor vehicle other than principally for the purpose of resale, from a retail seller in a retail installment transaction.

■ Here, Ciminelli signed the operative document, the "Texas Automobile Retail Instalment Contract," as a co-buyer. Under the terms of the contract, the co-buyer agreed to joint and several liability with the Buyer, and the term "Buyer" encompassed both buyers and co-buyers who signed the contract. The contract stated that the "Buyer" purchased the vehicle from the seller on a specified deferred payment basis and upon the contract's other terms and conditions. In addition, the buyer acknowledged the delivery and acceptance of the vehicle in the contract. From an examination of the "Texas Automobile Retail Instalment Contract," we conclude that Ciminelli's signing the contract at Tradewinds' request as a co-buyer manifested both parties' intent that Ciminelli acquire the motor vehicle under the contract, and that he therefore qualifies as a "Retail Buyer" or "Buyer" under Tex.Rev.Civ.Stat.Ann. art. 5069–7.01(b).

Ford Credit and Tradewinds urge that *Hensley v. Lubbock National Bank*, 561 S.W.2d 885 (Tex.Civ.App.—Amarillo 1978, no writ), should control the disposition of this cause. We do not share Ford Credit's and Tradewinds' view. We read the court

of civil appeals' decision in *Hensley* as excluding Hensley from the class of "Retail Buyers" or "Buyers" because he acquired the vehicles there involved principally for the purpose of resale, not because Hensley did not "buy" the vehicles. *Id.* at 889. Tex.Rev.Civ.Stat.Ann. art. 5069–7.01(b) specifically excludes persons who buy motor vehicles principally for the purpose of resale from being a "Retail Buyer" or "Buyer." Thus, *Hensley* does not conflict with our holding that Ciminelli qualifies as a "Retail Buyer" or "Buyer."

■ To recover penalties, however, Ciminelli must also be an "obligor" of the contract as prescribed in the penalty provisions of the consumer credit laws. Tex.Rev.Civ. Stat.Ann. arts. 5069–8.01 to 5069–8.06. An "obligor" as contemplated by the penalty provisions in Chapter 8 is a person who contracts to pay, or pays interest, a time price differential or another charge greater than those authorized by the consumer credit statutes. In addition, "obligors" include persons who have not received the performance of duties or requirements imposed upon sellers or holders by the statutes, or have fallen victim to the statutorily prohibited acts or practices. Tex.Rev.Civ. Stat.Ann. art. 5069–8.01(a), (b); *cf. Harnett v. Adam's & Holmes Mortgage Co.*, 539 S.W.2d 181, 183 (Tex.Civ.App.—Texarkana 1976, no writ) (determination of "obligor" under usury laws).

The installment contract here bound Ciminelli in his individual capacity; he had, by signing as co-buyer, accepted primary liability under the contract. *See generally Houston Sash and Door Co. v. Heaner*, 577 S.W.2d 217, 222 (Tex.1979); *Micrea, Inc. v. Eureka Life Insurance Co.*, 534 S.W.2d 348, 354 (Tex.Civ.App.—Fort Worth 1976, writ ref'd n. r. e.). We hold, therefore, that a person who signs a motor vehicle installment contract as a co-buyer and becomes primarily liable thereon is an "obligor" as contemplated by the penalty provisions contained in Chapter 8 of Texas' consumer credit statutes.

Accordingly, we reverse the judgments of the trial court and court of civil appeals and remand the cause to the trial court.

Dissenting opinion by DENTON, J.

DENTON, Justice, dissenting.

I respectfully dissent. It is my opinion that the court of civil appeals has correctly decided this case and I agree with that court's opinion.