Opinion filed August 2,
2012

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-10-00212-CV

                                                    __________

 

                      NATHAN
PARK, INDIVIDUALLY AND D/B/A 

                             PARK
MOWING SERVICE, Appellant

 

                                                             V.

 

    CLAUDE PAYNE D/B/A
HASKELL TRACTOR SERVICE, Appellee



 

                                   On
Appeal from the 39th District Court

 

                                                           Haskell
County, Texas

 

                                                     Trial
Court Cause No. 11,528

 



 

                                                                  O
P I N I O N

Claude Payne d/b/a Haskell Tractor Service filed a breach of
contract suit against Nathan Park, individually and d/b/a Park Mowing Service. 
After a bench trial, the trial court found in favor of Payne and awarded him damages
of $13,485 and attorney’s fees of $4,432.  Park appeals in three issues.  We
affirm.

Claude Payne owns and operates the Haskell Tractor Service in
Haskell, Texas.  Haskell Tractor is in the business of right-of-way mowing
under contract with the State of Texas and operates in Haskell, Jones,
Throckmorton, Knox, and Stonewall counties.  Those who want to bid on the
mowing contracts submit sealed bids to the State.  As far as the mowing
contract for Haskell County is concerned, the sealed bids were submitted to the
Texas Department of Transportation in Abilene.  The total amount of acreage to
be mowed under the Haskell County contract was 6,632 acres, and there were to
be three cycles of mowing.[1]  Under the
contract, the State notifies the contractor when it is time to begin mowing the
acreage for a particular cycle.  After the mowing has been completed and after a
supervisor from the State certifies that the contractor has completed the
mowing cycle satisfactorily, the State pays the contractor.  The State makes
those payments in a month or less after the supervisor certifies that the
contractor has satisfactorily completed the work.

In 2006, Haskell Tractor submitted a bid for mowing in
Haskell County that was to take place in 2007; it was unsuccessful.  Payne
talked to the owner of the successful bidder, Park Mowing, about subcontracting
the mowing in Haskell County.  To that end, Park, the owner of Park Mowing, and
Payne signed a contract.

One of the provisions of the contract required that Haskell
Tractor give Park “an executed W-9 form and a certificate of insurance showing
proof of workers compensation and general liability insurance” naming Park as
an additional insured before Haskell Tractor began work under the subcontract. 
A W-9 is a tax form.  Park required the proof of workers’ compensation
insurance to avoid having to provide workers’ compensation insurance on Haskell
Tractor’s employees.  Park needed proof of general liability insurance so that,
if there was an accident while Haskell Tractor was performing under the
contract, the claim could be made under Haskell Tractor’s insurance rather than
Park’s insurance.

Haskell Tractor did not provide the required documentation to
Park.  Nevertheless, the State notified Park that it was time to begin the
first cycle of mowing in Haskell County.  In turn, Park notified Haskell
Tractor to begin work.  Haskell Tractor performed the mowing work and notified
Park when it was completed.  The State paid Park Mowing for the work, and Park
Mowing paid Haskell Tractor.  Park Mowing also paid Haskell Tractor for the
second cycle of mowing in Haskell County.  Park did not notify Haskell Tractor that
it was time for the third cycle of mowing.   Payne noticed that Park Mowing tractors
were performing the third cycle of mowing in Haskell County.[2] 
Payne testified that he called Park, but Park offered no explanation other than
to say that he was going to mow the acreage himself.

Park testified that he asked Payne to furnish the required
documentation three times, and although Payne promised to send it, he never did. 
Park testified that he was going to be audited to verify that he had the proper
insurance and that, since he did not have the documentation from Haskell
Tractor, his company performed the third cycle of mowing in an effort to
minimize his liability “in case something happened on the road.”

In its first issue, Park Mowing contends that Haskell Tractor
violated the contract by failing to give Park Mowing the required documentation
prior to the time that it began the work.  Essentially conceding that it
breached the contract, Park Mowing argues that it was excused from further
performance of the contract and that it was justified when it did not allow
Haskell Tractor to perform the third cycle of mowing.  

“It
is a fundamental principle of contract law that when one party to a contract
commits a material breach of that contract, the other party is discharged or
excused from further performance.”  Mustang Pipeline Co. v. Driver Pipeline
Co., 134 S.W.3d 195, 196 (Tex. 2004).  Material breach is an affirmative
defense to breach of contract and, as such, must be pleaded.  Compass Bank
v. MFP Fin. Servs., 152 S.W.3d 844, 852 (Tex. App.—Dallas 2005, pet. denied). 
However, unpleaded defenses that are tried by the consent of the parties are
treated as if they had been raised by the pleadings.  Case Corp. v. Hi-Class
Bus. Sys. of Am., Inc., 184 S.W.3d 760, 771 (Tex. App.—Dallas 2005, pet.
denied).  An issue is tried by consent when the record shows that both parties
understood the issue in the case and the other party did not complain.  Id. 
The record contains extensive testimony that Haskell Tractor failed to provide
the required documentation.  This testimony was introduced without objection. 
The record shows that both parties understood that was the issue in the case. 
Thus, the issue of material breach was tried by consent.    

The
trial court entered findings of fact and conclusions of law, but did not make
any findings on the defenses of material breach or repudiation.[3] 
When a trial court does not enter findings that establish any element of the
grounds of a defense, the party relying on that defense must request additional
findings to avoid a waiver on appeal.  Pinnacle Homes Inc. v. R.C.L.
Offshore Eng’g Co., 640 S.W.2d 629, 630 (Tex. App.—Houston [14th Dist.]
1982, writ ref’d n.r.e.); see Tex.
R. Civ. P. 299 (“The judgment may not be supported upon appeal by a
presumed finding upon any ground of recovery or defense, no element of which
has been included in the findings of fact.”).  Park did not request any
additional findings on the issue of material breach.  Because Park did not
request additional findings, he has waived the defense of material breach and
our consideration thereof.  Micrea, Inc. v. Eureka Life Ins. Co. of Am.,
534 S.W.2d 348, 357 (Tex. Civ. App.—Fort Worth 1976, writ ref’d. n.r.e.); McKenzie
v. Carte, 385 S.W.2d 520, 528–29 (Tex. Civ. App.—Corpus Christi 1964, writ
ref’d. n.r.e.); see Puckett v. First City Nat’l Bank of Midland, 702
S.W.2d 232, 240 (Tex. App.—Eastland 1985, writ ref’d n.r.e.).  Park’s first issue
is overruled.

In his second issue, Park contends that the evidence is
legally insufficient to support the trial court’s award of $13,485 in damages
for lost profits.  When we review an issue of legal sufficiency, we consider
only the evidence and inferences that tend to support the finding, and we disregard
all evidence and inferences to the contrary.  Holt Atherton Indus., Inc. v.
Heine, 835 S.W.2d 80, 84 (Tex. 1992).  If the record contains more than a
scintilla of evidence supporting the findings, then the no-evidence challenge
fails.  Id.  

Recovery for lost profits does not require an exact
calculation, but the injured party must do more than show it suffered “some
lost profits.”  Id.  “The amount of the loss must be shown by competent
evidence with reasonable certainty.”  Id.  “As a minimum, opinions or
estimates of lost profits must be based on objective facts, figures or data
from which the amount of lost profits can be ascertained.”  Id.  

Payne testified that Park would have owed him $39,925.10 for
mowing during the last cycle.  He further testified that his profit would have
been $5 per acre.  As has been previously noted, the acreage mowed in the final
cycle was 2,697.  Thus, the record shows Payne’s lost profits for the last
mowing cycle were $13,485.  Payne, as the owner of Haskell Tractor, was
competent to testify as to his profit margin on lost business.  See ERI
Consulting Eng’rs, Inc. v. Swinnea, 318 S.W.3d 867, 876–77 (Tex. 2010). 
The evidence is sufficient to support the award of $13,485 in lost profits.  Park’s
second issue is overruled.

In his final issue, Park contests the award of attorney’s
fees to Payne.  Park concedes that there was enough evidence to support the
amount of attorney’s fees awarded.  He argues that, because no damages should
have been awarded, an award of attorney’s fees must necessarily fail since
attorney’s fees ordinarily are not appropriate when damages are not awarded. 
We have, however, found the evidence sufficient to support the award of
damages.  Park’s argument is inapposite, and his third issue is overruled.

The judgment of the trial court is affirmed.

 

 

ERIC KALENAK

JUSTICE

 

August 2, 2012

Panel consists of: Wright, C.J.,

McCall, J., and Kalenak, J.









                [1]There is conflicting evidence on
how much acreage was in a cycle.  At one point, Payne testified that a cycle
was the entire acreage of the contract, 6,632 acres.  However, there is other
evidence in the record that shows 6,632 acres was a cumulative amount of
acreage under the contract and not a “per cycle” amount.  Park testified that
the 6,632 acres was a cumulative amount—equaling two “full width” mows and one
“strip” mow.  Plaintiff’s Exhibit No. 3 gives the acreages that were mowed and
the amounts that were paid under the mowing contract.  The document lists a
“full width mow” as being 2,697 acres, which is 40% of the total acreage.  The
exhibit then lists a “strip mow” as being 1,238 acres, which is 20% of the
total acreage.  The exhibit lists the total amount Haskell Tractor was to be
paid under the contract as $100,143.20.  This amount equals the total acreage
amount, 6,632, multiplied by the amount Haskell Tractor was to be paid per
acre, $15.10.  Payne calculated his lost revenue at $39,925.10.  This would
have been a mow of 2,644 acres, which is approximately 40% of the total
acreage.  It is, thus, apparent from the record that a cycle could be as much
as 40% of the total acreage of the contract (a “full width” mow) or as little
as 20% (a “strip” mow).    





                [2]The record shows
that the full 2,697 acres was mowed for the final cycle.  





                [3]The findings
of fact read as follows:

 

                1. 
Plaintiff and Defendant entered into a Subcontract Agreement dated January 8,
2007.

 

                2. 
This subcontract provided that Defendant would pay to Plaintiff the sum of
$100,143.20 for performance of the Mowing Contract that Defendant had with the
Texas Department of Transportation.

 

                3. 
Plaintiff performed the first two of three phases of the Mowing Contract and
was paid $60,218.10 for these two phases.

 

                4. 
Defendant refused to allow Plaintiff to complete the contract, when Plaintiff
was willing and able to complete it.

 

                5. 
Plaintiff’s lost profits on the third phase of the contract is $13,485.00 at
$5.00 per acre for 2697 acres.

 

                6. 
Plaintiff incurred reasonable attorneys fees of $4,432.00.