# IN THE SUPREME COURT OF TEXAS

No. 18-0566

LOCKHEED MARTIN CORPORATION, PETITIONER,

v.

GLENN HEGAR, COMPTROLLER OF PUBLIC ACCOUNTS OF THE STATE OF TEXAS, AND KEN PAXTON, ATTORNEY GENERAL OF THE STATE OF TEXAS, RESPONDENTS

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRD DISTRICT OF TEXAS

JUSTICE BOYD, dissenting

This is a Texas-style "no vehicles in the park" case,[1] except the unambiguous meaning of the term "buyer" makes this one so much simpler. The statute itself is straightforward: A sale of tangible personal property generates Texas receipts "if the property is delivered or shipped *to a buyer in this state* regardless of the FOB point or another condition of the sale."[2] Under the federal

---

[1] The well-known hypothetical case appeared in the famous 1958 debate between Professor Hart and Professor Fuller in the Harvard Law Review. *See* H. L. A. Hart, *Positivism and the Separation of Law and Morals*, 71 HARV. L. REV. 593, 607 (1958); Lon L. Fuller, *Positivism and Fidelity to Law - A Reply to Professor Hart*, 71 HARV. L. REV. 630, 663 (1958). Professors have long used the hypothetical to challenge students' understanding of law, the rule of law, and statutory interpretation. *Sturgeon v. Frost*, — U.S.—, 139 S. Ct. 1066, 1087–88 (2019) (Sotomayor, J., concurring); *see*, *e.g.*, Bernard W. Bell, *"No Motor Vehicles in the Park": Reviving the Hart-Fuller Debate to Introduce Statutory Construction*, 48 J. LEGAL EDUC. 88, 89 (1998) (describing author's use of the hypothetical to teach, *inter alia*, "three basic interpretive approaches (textualism, purposive interpretation, and intentionalism)"). Law review articles addressing the hypothetical are too many to mention, but for Supreme Court references *see Heien v. North Carolina*, 574 U.S. 54, 66 (2014); *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 562 (2012); *F.C.C. v. NextWave Personal Commc'ns*, 537 U.S. 293, 311 (2003) (Breyer, J., dissenting); *Dep't of Commerce v. U.S. House of Representatives*, 525 U.S. 316, 350 (1999) (Breyer, J., concurring in part and dissenting in part).

[2] Former TEX. TAX CODE § 171.1032(a) (emphasis added). *See* Acts 2006, 79th 3rd C.S., ch. 1, sec. 2, 2006 Tex. Gen. Laws 1, 1. Current version at TEX. TAX CODE § 171.103.

Foreign Military Sales program, the U.S. government bought jets from Lockheed Martin and took delivery in Texas and then sold them to foreign governments. Applying the statute as written, the Comptroller, the trial court, and the unanimous court of appeals all agreed that the jets were delivered to "a buyer" in Texas. I'm with them.

The Tax Code does not define the term "buyer." So we must apply its common, ordinary meaning, looking first to dictionary definitions and then to other uses in statutes, cases, and similar authorities. *Tex. State Bd. of Examiners of Marriage & Family Therapists v. Tex. Med. Ass'n*, 511 S.W.3d 28, 35 (Tex. 2017). A "buyer" is "[s]omeone who makes a purchase," and a "purchaser" is "[s]omeone who obtains property for money or other valuable consideration." *Buyer*, *Purchaser*, BLACK'S LAW DICTIONARY (11th ed. 2019).[3] Under these facts, the U.S. government is indisputably a "buyer" because it obtained the jets in exchange for money it paid to Lockheed Martin. The foreign governments that purchased the jets from the U.S. government cannot be Lockheed Martin's "buyer" because, as the Court acknowledges, the federal program "forecloses implying a direct contractual relationship between" Lockheed Martin and the foreign governments. *Ante* at ___.

The Court never discusses or considers the statute's words or their plain meaning. The statute does not say a sale generates Texas receipts if the product is delivered to the "*ultimate*" buyer in Texas, *see ante* at ___, or even "to *the*" buyer in Texas. It says "*a* buyer" in Texas. No one disputes that the U.S. government bought the jets from Lockheed Martin in Texas.

---

[3] *See Ciminelli v. Ford Motor Credit Co.*, 624 S.W.2d 903, 905 (Tex. 1981) (relying on definition of "buy" to define "buyer" as one who "acquire[s] (property) by giving an accepted price or consideration therefor") (quoting WEBSTER'S NEW INTERNATIONAL DICTIONARY (2d ed. unabridged)).

Nevertheless, the Court concludes the U.S. government was not Lockheed Martin's "buyer" because the Court believes the sales *should not* generate Texas receipts in these "unique circumstances." *Ante* at ___. But the statute's plain language makes no accommodation for these or any other "unique circumstances." It provides no exception if "a buyer":

- had the product "manufactured" for a subsequent buyer,

- "ultimately delivered" the product to a subsequent buyer,

- "essentially acts as a required intermediary" for a subsequent buyer,

- is trying to "retain maximum oversight" over the seller's transaction with a subsequent buyer,

- had the product "custom built" and "uniquely designed" for a subsequent buyer,

- paid for the product with funds obtained from a subsequent buyer,

- agreed to sell the product at cost to a subsequent buyer, or

- is not "the market" for the product.[4]

Nor does the statute's reference to "conditions of the sale" support the Court's construction. The Court concludes that the federal requirement "that the U.S. take intermediate title to the goods is a 'condition of the sale' *to the foreign government* that is disregarded for franchise-tax purposes." *Ante* at ___ (emphasis added). But the statute focuses on the sale by Lockheed Martin, not a subsequent sale to the foreign government, and as the Court itself acknowledges, there can be no sale from Lockheed Martin to the foreign government because the federal program precludes any such contractual relationship. According to the Court's analysis, Lockheed Martin's sale generates Texas receipts if the property is delivered to a buyer in Texas *unless* that sale is a

---

[4] *See ante* at ___–___ & n.14.

condition of an "ultimate" sale to a non-Texas buyer. The statute, however, provides the opposite: Lockheed Martin's sale generates Texas receipts "if the property is delivered or shipped to a buyer in this state *regardless of* [any] condition of the sale." TEX. TAX CODE § 171.103(a)(1) (emphasis added). Lockheed Martin delivered the jets to its buyer (the U.S. government) in Texas. *That* sale is the only sale the statute addresses, and although that sale may be subject to various conditions,[5] the sale generates Texas receipts "regardless" of those conditions.[6]

No doubt, these "unique circumstances" *could* provide a legitimate policy reason for excluding the sales from Lockheed Martin's Texas receipts. But we cannot decide this case based on a policy reason; we must decide it based on the statute's plain language. Even in these "unique circumstances," the U.S. government was "a buyer" to whom the jets were delivered in Texas, "regardless" of any conditions of that sale. *See ante* at __. Under the statute's plain language, that ends the analysis.

_____
Jeffrey S. Boyd
Justice

Opinion delivered: May 1, 2020

---

[5] *See ante* at ___ (explaining that the U.S. government is responsible for procuring the items "under terms and conditions consistent with [Department] regulations and procedures," including the Department of Defense's Security Assistance Management Manual).

[6] I "summarily discount[] the distinctions between the FMS transactions at issue and the typical sale-for-resale transactions," *ante* at ___ n.15 because the statute's plain language summarily discounts them as well.