HOUSTON SASH AND DOOR
COMPANY, INC., Petitioner,

v.

Beatrice Elinor HEANER, Independent
Executrix, et al., Respondents.

No. B-7412.

Supreme Court of Texas.

Jan. 31, 1979.

Rehearing Denied Feb. 28, 1979.

Travis G. Wilson, M. R. Carr, Houston, for petitioner.

Jefferson, Naness, Valdes & Mims, Carnegie H. Mims, Jr., Houston, for respondents.

JOHNSON, Justice.

This is a case which presents a question of first impression—whether the charging of interest on an open account during the interest-free period specified in Article 5069–1.03 [1] constitutes interest in excess of double that allowed by Article 5069–1.01, *et seq.*, thereby subjecting the creditor to loss of principal, twice the interest charged, all other charges, and debtor's reasonable attorneys' fees as provided by Article 5069–1.-06(2). We hold that it does.

In this case the plaintiff creditor, Houston Sash and Door Company, sought recovery against a corporate debtor, Bedford Corporation, on its open account and against an officer of the corporation, John E. Heaner, who had guaranteed the corporation's debt by written agreement. The defendants answered that plaintiff had charged and contracted for a usurious rate of interest in excess of double that allowed by law. Trial was to the court which rendered judgment for the plaintiff. The court of civil appeals reversed and remanded, agreeing with defendants that the transaction was usurious. 560 S.W.2d 525. We disagree in several respects with the courts below.

On May 31, 1973 John E. Heaner, Chairman of the Board of Bedford Corporation, executed a letter agreement guaranteeing payment of all sums owed Houston Sash and Door Company by Bedford. Heaner also agreed to pay "interest from the due date of any [Bedford] account to the date of payment at the rate of 12% per annum." Following the execution of this guaranty Bedford commenced purchasing building supplies and materials from Houston Sash on open account.

Between January 15, 1974 and March 28, 1974 Bedford established a debt in its account with Houston Sash in the amount

---

1. This and all other statutory references are to the Texas Revised Civil Statutes Annotated.

of $13,575.73. When the account was not paid, Houston Sash filed suit in February 1975, naming Bedford and Heaner as defendants. Heaner died prior to trial and his estate was substituted as defendant.

At trial, the plaintiff called its credit manager who identified certain work orders, invoices, and statements of account pertaining to the supplies and materials sold Bedford on open account. Each invoice stated under "TERMS OF SALE" that interest at the rate of twelve percent per annum would be charged on all past-due accounts. The credit manager testified that accounts were past due after thirty days[2] and that plaintiff, by separate invoice, charged its customers interest at that twelve percent rate. Among the records produced and identified by plaintiff's credit manager were two interest invoices dated March 27, 1974 and April 26, 1974 reflecting and verifying that interest at the rate of twelve percent per annum had been charged on Bedford's account. The records identified also included the March and April statements of account which incorporated the interest invoices as a part of the current balance of Bedford's account.

In its second amended petition Houston Sash alleged that the debt amounted to $13,766.16. This amount, however, included not only the sums charged for goods sold to Bedford, but also the interest previously charged and recorded during the months of March and April 1974. Houston Sash additionally prayed for interest at six percent per annum, a rate referred to in the first part of Article 5069–1.03.[3] The defendants filed a sworn denial of the account, alleged that plaintiff had charged usurious interest, and prayed that plaintiff be penalized as provided in Article 5069–1.06.[4] The trial court, however, merely deducted from Bedford's account the amount charged on the two interest invoices and rendered judgment against Bedford and Heaner's estate, jointly and severally, in the amount of $13,575.73. The judgment further recited that Houston Sash recover from Bedford the additional sum of $3,699.43.[5]

Defendants appealed, contending that the trial court had erred in rendering judgment on the debt because Houston Sash had charged interest in excess of double that allowed by law and was therefore required to forfeit the principal, twice the amount of interest charged, and reasonable attorneys' fees, all as provided by Article 5069–1.06(2). The court of civil appeals agreed, noting that Houston Sash had neither pleaded nor proved that Bedford had agreed to pay interest on its open account.[6] The court of

2. The invoice provides under "TERMS OF SALE" that payment is due "30 DAYS AFTER THE 1ST OF THE MONTH FOLLOWING DATE OF SHIPMENT."

3. Article 5069–1.03 provides:
"When no specified rate of interest is agreed upon by the parties, interest at the rate of six percent per annum shall be allowed on all written contracts ascertaining the sum payable, from and after the time when the sum is due and payable; and on all open accounts, from the first day of January after the same are made."

4. Article 5069–1.06(1) and (2) provides:
"(1) Any person who contracts for, charges or receives interest which is greater than the amount authorized by this Subtitle, shall forfeit to the obligor twice the amount of interest contracted for, charged or received, and reasonable attorney fees fixed by the court provided that there shall be no penalty for a violation which results from an accidental and bona fide error.

"(2) Any person who contracts for charges or receives interest which is in excess of double the amount of interest allowed by this Subtitle shall forfeit as an additional penalty, all principal as well as interest and all other charges and shall pay reasonable attorney fees set by the court; provided further that any such person violating the provisions of this section shall be guilty of a misdemeanor and upon conviction thereof shall be punished by fine of not more than One Thousand Dollars. Each contract or transaction in violation of this section shall constitute a separate offense punishable hereunder."

5. Although not identified in the judgment, this sum apparently represents a recovery of interest from January 1, 1975 to the date of judgment.

6. The court of civil appeals stated: "There was no agreement plead or proved by plaintiff whereby Bedford would pay a rate of interest on its open account with Houston Sash in excess of 6%." 560 S.W.2d 525 at 526.

civil appeals determined that, in the absence of an agreed rate of interest, Houston Sash had authority to charge only the rate of interest specified in Article 5069–1.03; that by virtue of the specific wording of that Article, Houston Sash was not authorized to accrue, charge, or collect any interest on the open account until January 1, 1975, and, after that date, was allowed a maximum rate of only six percent per annum. The court of civil appeals, therefore, reversed the judgment of the trial court and remanded the cause, directing the trial court to determine defendants' reasonable attorneys' fees and then to render judgment for defendants as provided by Article 5069–1.06.

In its first point of error Houston Sash complains that the court of civil appeals erred in holding that, in the absence of an agreement, a charge of interest on an open account during the calendar year in which the account is made constitutes the charging of interest in excess of double the amount allowed by law, subjecting the creditor to the penalties provided by Article 5069–1.06(2).

Houston Sash concedes that it charged interest on Bedford's account at a time when it was not authorized to charge any interest. Houston Sash argues, however, that the charging of such interest falls within the scope of Article 5069–1.06(1) and not the more severe provisions of Article 5069–1.06(2). The more severe penalty specifies punishment for anyone who ". . . contracts for, charges or receives interest . . . in excess of double the amount of interest allowed by this Subtitle." Houston Sash contends that the "amount of interest allowed by this Subtitle" refers to the maximum rate of interest specified in the subtitle; i. e., the ten percent per annum allowed by Article 5069–1.-02,[7] and not the lesser rate of six percent per annum specified by Article 5069–1.03.

Since a rate of interest greater than ten percent per annum is deemed usurious under Article 5069–1.02, Houston Sash maintains that a rate of interest below ten percent is not usury, but simply uncollectible. Houston Sash argues then that a creditor must charge interest in excess of ten percent before the penalty forfeiture prescribed by Article 5069–1.06(1) applies and must charge interest in excess of twenty percent before the penalty forfeiture prescribed by Article 5069–1.06(2) applies.

In support of its interpretation of Article 5069–1.06, Houston Sash offers *Bruner v. Republic Supply Company*, 416 F.2d 763 (5th Cir. 1969), and *Carder v. Knippa Mercantile Co.*, 1 S.W.2d 462 (Tex.Civ.App.— San Antonio 1927, writ dism'd). *Bruner* and *Carder*, however, interpret former statutes replaced by the present subtitle and are of little value. While the former statutes are similar to the present subtitle in some respects, a comparison reveals that the Legislature substantially modified the penalties applied to usurious transactions.[8] The predecessor to Article 5069 includes no provision comparable to Article 5069–1.06.

Bedford, on the other hand, argues that the interest rate specified in Article 5069–1.03 clearly applies to its open account because Houston Sash neither pleaded nor proved an agreement regarding interest. Article 5069–1.03 allows a maximum rate of interest of six percent per annum. The Article, however, makes no provision for interest during the calendar year in which an open account is made. Since Houston Sash charged interest on Bedford's account during the interest-free period specified in Article 5069–1.03, Bedford argues that Houston Sash is subject to the penalty prescribed by Article 5069–1.06(2). Under Bedford's interpretation of the subtitle, *any* rate of interest is in "excess of double the amount of interest allowed by this Subtitle"

7. Article 5069–1.02 provides:

"Except as otherwise fixed by law, the maximum rate of interest shall be ten percent per annum. A greater rate of interest than ten percent per annum unless otherwise authorized by law shall be deemed usurious. All contracts

for usury are contrary to public policy and shall be subject to the appropriate penalties prescribed in Article 1.06 of this Subtitle."

8. See Historical Notes to Articles 5069–1.01, 5069–1.03, and 5069–1.06.

if charged at a time when no interest whatever is allowed.

A resolution of this first point requires a consideration of the basic usury laws of this state. Article 16, Section 11, of the Texas Constitution, as amended November 8, 1960, authorizes the Legislature to "define interest and fix maximum rates of interest." The Texas Constitution makes no attempt to define "usury," but merely states that in the absence of legislation, "all contracts for a greater rate of interest than ten per centum (10%) per annum shall be deemed usurious."

Pursuant to the Constitution, the Legislature enacted Article 5069–1.01, *et seq.*, effective October 1, 1967, in which it defines "interest" and "usury," fixes various maximum rates of interest, and prescribes penalties for those engaging in "usurious" transactions. Although the subtitle defines "usury," the term is not found in the penalty provisions and appears in only one other Article in the subtitle.[9] Instead, the penalty forfeitures are conditioned upon contracting for, charging, or receiving interest "which is greater than the amount *authorized*" by the subtitle or "which is in excess of double the amount of interest *allowed*" by the subtitle. [Emphasis added.] Our immediate concern then is not a determination of the amount of interest constituting "usury" or "double usury," but rather the amount of interest the subtitle authorizes or allows.

█ An examination of the subtitle reveals that the amount of interest "allowed" or "authorized" depends upon the facts and circumstances attending the credit transaction. Article 5069–1.02 declares that "the maximum rate of interest shall be ten percent per annum," except as otherwise authorized by law. The application of this ten percent rate, however, depends upon proof that the obligor has agreed to pay such rate. When the obligor has not agreed to a specific rate of interest. Article 5069–1.03 fixes six percent per annum as the maximum rate of interest allowed. Article 5069–1.03 then differentiates between debts incurred on "written contracts" and debts incurred on "open accounts." The Article is quite specific that the six percent rate allowed on written contracts is to begin "from and after the time when the sum is due and payable." Equally specific is the provision which follows, applicable to open accounts and the date when such interest is allowed to begin on them, it being "from the first day of January after the same are made." The Article clearly permits no interest on open accounts during the calendar year in which the account is made.[10]

█ It is undisputed that Houston Sash charged interest on Bedford's account during the calendar year in which it was made. It is also apparent that the interest charged (twelve percent) is in excess of double the amount allowed by Article 5069–1.03; *i. e.*, in excess of twice zero. Houston Sash is, therefore, subject to the penalty forfeiture prescribed by Article 5069–1.06(2). Accordingly, we are in agreement with that portion of the judgment of the court of civil appeals which pertains to defendant Bedford.

There remains the question of whether the court of civil appeals erred in failing to distinguish between the defendants, Bedford and Heaner. Houston Sash contends in its second point of error that the suit against Heaner was based on his written contract and not on Bedford's open account. Heaner was not a co-obligor on the open

9. Article 5069–1.02 provides in part: "All contracts for usury are contrary to public policy and shall be subject to the appropriate penalties prescribed in Article 1.06 of this Subtitle."

10. As early as 1974, the Office of Consumer Credit Commissioner issued opinion letters to members of the Texas Retail Merchants Association and other interested parties warning them of this problem. The letter stated that there was no statutory authorization for charging one percent or one and one half percent per month as late charges on open accounts, quoted the provisions of Articles 5069–1.03 and 5069–1.04, and concluded with the following warning: "The penalties for violation of the provisions of Article 5069 are substantial, and any retailer who is assessing a finance charge on open accounts should closely examine his business procedures."

account. Instead, by written contract Heaner guaranteed payment of Bedford's account. Houston Sash argues that Article 5069–1.04 [11] governs the written guaranty. We agree.

■ Article 5069–1.06 provides in plain language that the prescribed penalties be forfeited "to the obligor." Such language evidences the Legislature's intent that the usury defense remain personal to the debtor. Since statutes of a penal nature are to be strictly construed, the penalty forfeitures provided in Article 5069–1.06 are restricted to the immediate parties to the transaction creating the usury defense. *Micrea, Inc. v. Eureka Life Ins. Co. of Amer.*, 534 S.W.2d 348 (Tex.Civ.App.—Fort Worth 1976, writ ref'd n. r. e.).

■ The subtitle, furthermore, does not declare the underlying open account transaction void, but merely provides Bedford a defensive setoff. *Wall v. East Texas Teachers Credit Union*, 526 S.W.2d 148, 151 (Tex.Civ.App.—Texarkana 1975), *rev'd on other grounds*, 533 S.W.2d 918 (Tex.1976). It is only where the underlying obligation is void for illegality that a guaranty must fall with it. *National City Bank v. Taylor*, 293 S.W. 613 (Tex.Civ.App.—Texarkana 1927, no writ). Heaner's guaranty agreement, therefore, is not dependent on the vitality and force of the underlying account. *Beddall v. Reader's Wholesale Distributors, Inc.*, 408 S.W.2d 237 (Tex.Civ.App.—Houston 1966, no writ). Further, a judgment against Bedford is not a prerequisite to Heaner's liability because he expressly waived any requirement that Houston Sash first procure judgment against Bedford. Heaner's estate, therefore, remains liable on his absolute guaranty.

■ Since Heaner is an obligor only under his written guaranty, we hold that his estate may not interpose Bedford's usury defense. We further hold that the interest rate specified in Article 5069–1.04 applies to the guaranty. That Article allows

the parties to a written contract to agree to a maximum rate of interest of ten percent per annum. The guaranty agreement, however, provides for an interest rate of twelve percent per annum on all sums due Houston Sash from Bedford. A written contract which provides for a rate of interest greater than ten percent per annum, except as otherwise authorized by law, is subject to the appropriate penalty prescribed in Article 5069–1.06. Houston Sash, therefore, contracted for a rate of interest "greater than the amount authorized by this Subtitle" and, accordingly, is liable for the penalty prescribed in Article 5069–1.06(1).

That portion of the judgment of the court of civil appeals which pertains to defendant Bedford is affirmed. That portion of the judgment of the court of civil appeals which pertains to defendant Heaner's estate is reversed and remanded to the trial court for entry of judgment in favor of Houston Sash, less an offset to Heaner's estate of twice the amount of interest contracted for, and for a determination by the trial court of the amount of attorneys' fees for which Houston Sash is also liable.

GREENHILL, C. J., and BARROW, J., concur in the result.

---

11. Article 5069–1.04 provides:

"The parties to any written contract may agree to and stipulate for any rate of interest not exceeding ten percent per annum on the amount of the contract; and all other written contracts whatsoever, except those otherwise authorized by law, which may in any way, directly or indirectly, provide for a greater rate of interest shall be subject to the appropriate penalties prescribed in this Subtitle."