**GREENWAY BANK & TRUST OF HOUSTON, Appellant,**

v.

**Cyril SMITH, Jr., et al., Appellees.**

No. 01–82–0302–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 30, 1984.
Rehearing Denied Sept. 27, 1984.

Ronald E. Tigner, Childs, Fortenbach, Beck & Guyton, Houston, for appellant.

Jon Mercer, Winston P. Crowder, Robbins & Crowder, James O'Donnell, Butler & Binion, Houston, for appellees.

Before EVANS, C.J., and LEVY and DOYLE, JJ.

## OPINION

DOYLE, Justice.

This is an appeal from a judgment ordering that appellant take nothing on its action upon an unpaid promissory note, and ordering that appellees take nothing on their claim of usury and fraud. We reverse and render.

This appeal arises from an action on a promissory note, executed by Cyril J. Smith, in 1972, and guaranteed by the appellees. Most of the testimony at trial, concerning the relevant facts leading up to this suit, was in sharp dispute. It was not disputed, however, that appellant, Greenway Bank (Greenway), loaned Smith, as trustee for North American Resources Corporations (North American), $196,000 as evidenced by the promissory note in suit. Nor was it disputed that the appellees signed separate guaranty agreements, promising to pay all debts owed by Smith to Greenway, and that sometime before the note became due, Smith entered bankruptcy, and all claims against him were stayed.

At the trial below, the jury found that the appellees had been fraudulently induced by the misrepresentations of Smith, to guarantee the trustee loan, but that Greenway had not been a part of any conspiracy to defraud the appellees. The jury also found that Greenway charged Smith additional interest on the trustee loan by

entering into a subsequent loan with Smith for $50,000.

The trial court's judgment provided that since "... the verdict of the jury was, in every instance, in favor of the party defending each claim or cause of action ... judgment should be rendered ... that all parties take nothing as a result of any claims filed by them against any other party or parties in this suit." Thus, despite all the claims and counter claims, none of the parties recovered anything from the other.

On appeal, Greenway raises three points of error, appellee, Trentham, raises five cross-points of error, and appellee, Robbin raises one cross-point of error.

The basic contention of Greenway is that the trial court erred in refusing to enter judgment in its favor in the amount of the unpaid principal, accrued interest, and attorney's fees as claimed in point of error one. As support for this contention, Greenway argues in its second and third points of error that the trial court erred in submitting special issue no. 1, in which the jury found that Greenway charged excessive interest on the principal loan which the appellees had signed as guarantors. Greenway also contends that the trial court erred in not granting its motion to disregard the jury finding on special no. 1 because:

a) The appellees are guarantors, and not obligors on the loan, and thus have no standing to assert usury;

b) Smith, the maker of the note, acted as trustee for a corporation, therefore, the interest rate did not exceed the corporate limit of 18%; and

c) the appellees have no right to recover any usurious interest paid by Smith since they paid none of the allegedly excessive interest.

Greenway ultimately contends that since the jury properly found that it did not participate in a conspiracy to deceive or defraud the appellees by inducing them to guarantee the trustee loan, and since the issue of usury was not properly before the trial court, this court should reverse and render judgment in its favor for the unpaid balance of the trustee note, plus accrued interest, and attorney's fees.

On the other hand, the appellees, William K. Robbins, Sr., and H. L. Trentham, contend that although the trial court did not err in refusing to grant judgment in favor of Greenway, the trial court did err in failing to grant the appellees' motion for judgment because:

a) the appellees are obligors on the loan, as defined in *Universal Metals & Machinery Inc. v. Bohart*, 539 S.W.2d 874 (Tex.1976);

b) the evidence unequivocally established the usurious taint to the loan transactions; therefore, the appellees are entitled to recover $127,202.84 under art. 5069–1.01 et seq; and,

c) the guaranty was induced by Smith's fraud and under Tex.Bus. & Comm. Section 27.01, Greenway is equitably estopped from keeping the benefit of the fraud and enforcing appellees' guaranties.

Legally, Greenway presents the stronger position. It is well established that only *obligors* on the debt may assert the penalty forfeitures for usury found in Tex.Rev.Civ.Stat. art. 5069–1.06. *Houston Sash and Door, Inc. v. Heaner*, 577 S.W.2d 217 (Tex.1979).

Article 5069–1.06 provides in part:

(1) Any person who contracts for, charges or receives interest which is greater than the amount authorized by this Subtitle, *shall forfeit to the obligor twice* the amount of interest contracted for, charged or received, and reasonable attorney fees fixed by the court provided that there shall be no penalty for a violation which results from an accidental and bona fide error. (Emphasis added)

Consistently, the courts have strictly construed the plain language of art. 5069–1.06, which defines an *obligor* as one who *pays*, is *charged* or has contracted to pay interest at a rate in excess of that allowed by law. See *Houston Sash, supra; Patterson v. Neel*, 610 S.W.2d 154 (Tex.Civ.App.—Houston [1st Dist.] 1980); *Hartnett v. Adams &*

*Holmes Mortgage Company*, 539 S.W.2d 181 (Tex.Civ.App.—Texarkana 1976); *cf. Ciminelli v. Ford Motor Credit Company*, 624 S.W.2d 903 (Tex.1981), where the court found that the person who signed Texas Auto Retail Contract in space designated co-buyer was primarily liable as a maker on the note, not as a guarantor, and could therefore assert defenses under consumer credit laws—art. 5069–1.01 et seq.

The Texas Supreme Court recently construed the meaning of the term "obligor" as used in art. 5069–1.06. In *Houston Sash*, the president of a corporation executed a written agreement which guaranteed payment of all corporate sums owed to Houston Sash on the corporation's open account. When the corporation failed to pay its account, Houston Sash sued both the estate of the corporate president, and the corporation. The estate asserted the defense of usury under art. 5069–1.06.

The court held the estate of the corporate president could not assert the corporation's usury defense because the written guaranty agreement was not "dependent upon the vitality and force of the underlying account." *Id.* at 222.

The court gave two reasons for its holding. First, the court found that since art. 5069–1.06 is of a penal nature, it should be strictly construed to provide relief only "to the immediate parties of the transaction creating the usury defense." *Houston Sash, supra* at 222. *See also, Patterson, supra; Micrea, Inc. v. Eureka Life Ins. Co. of America*, 534 S.W.2d 348 (Tex.Civ. App.—Fort Worth 1976, writ ref'd n.r.e.).

■ Second, the court relied on the well-established principle that where a guarantor waives any requirement that judgment first be procured against the maker, the guarantor provides an *absolute guaranty* of payment of the debt. In an earlier case, *Universal Metals & Machinery, Inc., supra*, the Texas Supreme Court had ruled that one who guarantees payment of a note and waives the requirement that the holder of the note exhaust its rights against the maker, becomes an absolute guarantor. As an absolute guarantor,

the guarantor becomes completely liable upon the principal's breach of contract, and is *prohibited* from prosecuting an action to recover a usury penalty under Tex.Rev.Civ. Stat.Ann. art. 1302–2.09. *Universal Metals & Machinery, Inc., supra.* In *Hartnett, supra*, the Texarkana Court of Appeals held that a corporate officer's written guaranty agreement, which waived the holder's recourse to the corporation, was in the nature of absolute guaranty prohibiting recovery under the usury statute. See also, *El Paso Bank & Trust v. First State Bank*, 202 S.W. 522 (Tex.Civ.App.1918, no writ).

■ In the instant case, the appellees signed written guarantee agreements, guaranteeing the full payment of all indebtedness "owing by Cyril J. Smith, trustee" to the appellant. The following paragraph of the agreement indicates that the appellees also agreed to waive the requirement that the appellant first procure judgment against Smith:

> Undersigned waive notice of bank's acceptance hereof, of the accrual, renewal, and extension of the indebtedness, of debtor's default, and of the accrual of undersigned's liability hereunder, as well as grace, notice, presentment for payment and protest with respect to every portion of the indebtedness.
>
> *The liability of any undersigned shall not be impaired, reduced or affected by the taking of any other security of* guaranty for the indebtedness, or by the release, surrender, subordination or loss of any such other security or guaranty, *or by bank's failure, refusal or neglect to collect the indebtedness from debtor or to enforce or preserve any other security or guaranty therefor,* or by the release of any other undersigned from liability hereon, or by the fact that the indebtedness at any time exceeds the amount above specified as the extent of undersigned's liability, or by any other undersigned's revocation hereof, or by the death, insolvency, bankruptcy or disability (such as infancy, coverture, insanity, or lack of corporate power) of debtor

or of any other undersigned, whether now existing or hereafter occurring. (Emphasis added)

Under this record, the appellees are absolute guarantors, and as such, they have no standing to assert the usury defensive set-off provided obligors in art. 5069–1.06. *Houston Sash, supra.*

 Moreover, it is undisputed that Cyril Smith signed the note as trustee for North American for the purchase of oil and gas properties. Although the use of the term "trustee" does not by itself create a "trust," where the evidence and circumstances show that the parties intended a trust, "... it is not reasonable to say that the descriptive word was used merely to identify or point out the person intended." *Neeley v. Intercity Management Corp.,* 623 S.W.2d 942 (Tex.Civ.App.—Houston [1st Dist.] 1981). Here, not only was Smith the president of North American, but each of the guarantors was a shareholder and/or a director of North American and each of the parties testified that he believed a trust existed. Therefore, under art. 1302–2.09 V.A.T.S., the appellees, as guarantors of a corporate note are prohibited from asserting a claim of usury, where the stipulated rate of interest on the note did not exceed 18%.

The appellees also assert that Greenway is equitably estopped from keeping the benefit of Smith's fraud under Tex.Bus. & Comm.Code sec. 27.01. In special issues no. 8 and 9, the jury found that Smith and Paul DeCleva fraudulently induced the appellees to sign the guaranty agreement. The appellees argue that Greenway received the only benefit possible from the fraud, the guaranty contract. According to the appellees, sec. 27.01 bars Greenway's claim, and establishes Greenway's liability as "a person who benefits from a false representation."

The flaw in the appellees' contention is that sec. 27.01 is only applicable to fraudulent misrepresentations made in real estate and stock transactions. Section 27.01 provides in part:

(a) Fraud in a transaction *involving real estate or stock in a corporation or joint stock company consists of a*

(1) false representation of a past or existing material fact, when the false representation is

(A) made to a person for the purpose of inducing that person to enter into a contract; and

(B) relied on by that person in entering into that contract;

(b) A person who makes a false representation of false promise, and a person who benefits from that false representation or false promise, commit the fraud described in Subsection (a) of this section and are jointly and severally liable to the person defrauded for actual damages. *The measure of actual damages is the difference between* the *value of the real estate or stock as represented or promised, and its actual value in the condition in which it is delivered at the time of the contract.*

(c) A person who wilfully makes a false representation or false promise, and a person who knowingly benefits from, a false representation or false promise, commit the fraud described in Subsection (a) of this section and are liable to the person defrauded for exemplary damages not to exceed twice *the amount of the actual damages.* (R.S. Art. 4004, sen. 1, 3, and 4) Acts 1967, 60th Leg., vol. 2, p. 2343, ch. 785, Sec. 1. (Emphasis added)

The statute makes no mention of any application to guaranty agreements, secured by real estate, or to a party who "merely" loaned money for the purchase of real estate.

 Indeed, the statute does not contemplate the type of "loss" alleged by the appellees, but a loss in the "value" of property due to fraudulent misrepresentations. The appellees' alleged *loss* arises from a misrepresentation that the loan would be *secured* by oil and gas properties. Regardless of the value of the oil and gas properties, the appellees would remain liable for any unpaid sums on the note.

■ The equitable provision of sec. 27.01 which prevents third parties from "keeping the benefit of the fraud" cannot be applied to transactions outside the scope of the statute. Consequently, appellee Trentham's cross-points one through five are overruled.

We now look at Greenway's argument concerning the submission of special issue no. 1 which reads as follows:

> Do you find that Greenway contracted for, charged, or received interest in the "trustee loan" to Cyril J. Smith, Jr., by entering into the $50,000 loan to Cyril J. Smith, Jr. dated September 16, 1974? Answer: "We do."

Greenway asks this court to disregard this issue and the answer thereto for the reasons that such issue submits a question of law and not fact; that the issue was immaterial since Greenway was exonerated of any fraud or knowledge of fraud in the transaction; and that since the loan documents did not show an intent to charge usury on their face, the jury really had no evidence before it to justify its answer. The undisputed testimony showed that none of the guarantors paid any interest of any sort on either the $196,000 "trustee note" or the $50,000 note, nor did their guaranty require them to pay a usurious interest rate. The evidence further showed that the "trustee note" was renewed twice after the $50,000 loan had been paid.

■ It is well settled law that a party claiming usury must show that it was intended by the parties to the scheme that such should occur. In *Moss v. Metropolitan National Bank of Houston*, 533 S.W.2d 397 (Tex.Civ.App.—Houston [1st Dist.] 1976, no writ), Justice Peden wrote:

> One who uses the defense of usury in a suit on a note that does not call for usurious interest on its face has the obligation to establish that there was a corrupt agreement or scheme to cover usury and that such agreement or scheme was in full contemplation of the parties.

This identical principle was set forth in *American Century Mortgage Investors v. Regional Center, Ltd.*, 529 S.W.2d 578 (Tex.Civ.App.—Dallas 1975, writ ref'd n.r.e.) and *Prestonview Company, Ltd. v. State Mutual Investors*, 581 S.W.2d 701 (Tex.Civ.App.—Dallas 1979, writ ref'd n.r.e.).

■ Under the facts presented, the issue should have inquired whether the jury found that the $50,000 loan was intended by both Greenway and Smith to provide Greenway with additional interest on the "trustee loan." We agree with Greenway that the issue as submitted called for a conclusion of law and should have been disregarded by the trial court in rendering its judgment. *Miller v. Miles*, 400 S.W.2d 4 (Tex.Civ.App.—Tyler 1966, writ ref'd n.r.e.). We therefore sustain appellant's three points of error.

Appellee Robbins contends that the jury's response to special issue no. 37 was against the great weight and preponderance of the evidence. The appellee argues that because his testimony regarding his release from the guaranty agreement was never controverted, the jury should have found in special issue no. 37 that Robbins was indeed released from the guaranty agreement. Instead the jury found that Robbins had not been released from the guaranty agreement.

Contrary to the appellee Robbins' assertion, there was conflicting testimony concerning his release from his guaranty. Goodman, an officer of Greenway, denied releasing him from his guaranty, and Smith, the maker of the note, testified that he was unaware of Robbins' alleged release.

■ The uncorroborated testimony of an interested witness is not binding upon a jury, but merely raises an issue of fact. *R.T. Herrin Petroleum Transportation Co. v. Proctor*, 161 Tex. 222, 338 S.W.2d 422, 427 (Tex.1960). However, there must be some circumstance supporting the conclusion that a situation opposite to that to which the witness testified occurred. *Id.*

■ In the instant case, the testimony of Goodman and Smith provided the circumstances supporting the jury's finding

of fact which was contrary to Robbins' testimony. Moreover, the jury was free to reject an interested witness' uncorroborated testimony by observation of his demeanor, attitude, and similar factors incapable of reproduction in the written record. *Walker v. Jean Lafitte Hotel Corp.*, 94 S.W.2d 504 (Tex.Civ.App.—Galveston 1936, writ dism'd). Appellee Robbins' cross-point is overruled.

The judgment of the trial court is reversed. Judgment is here rendered that the appellant Greenway Bank & Trust of Houston recover of and from appellees, H.L. Trentham and William K. Robbins, Jr., jointly and severally, the sum of $119,-989.06 with interest at the rate of ten percent (10%) per annum from date of judgment; that third party plaintiffs, H.L. Trentham and William K. Robbins, Jr., have and recover of and from third party defendants, James A. Hall; the Estate of James A. Hall; Dorothy Meeker; and Alwyn Belcher, jointly and severally, the sum of $118,989.06; and that appellant Greenway Bank & Trust of Houston have and recover of and from the appellees, H.L. Trentham and William K. Robbins, Jr., all costs of court together with interest thereon at the rate of ten percent (10%) per annum from date of judgment.