IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN





 





NO. 3-90-165-CV





AIRPORT AUTOMOTIVE PLAZA COMPANY,



 APPELLANT


vs.





FEATHERLITE PRECAST CORPORATION,



 APPELLEE



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT



NO. 433,297, HONORABLE F. SCOTT McCOWN, JUDGE PRESIDING



 





 This appeal involves a large commercial real estate transaction gone bad. The
controversy came after extensive negotiations, the execution and amendment of multiple contracts,
and complicated and complex legal maneuvering providing for sales, options, buy-backs, and
subdivision platting on what was at heart merely the sale of a tract of land with some cash down
and the balance financed by the seller.

 Airport Automotive Plaza Company sued Featherlite Precast Corporation for breach
of contract, fraud, deceptive trade practices, and usury. Featherlite counterclaimed for breach of
contract and demanded payment on a promissory note. The trial court granted summary judgment
for Featherlite on all of its claims and rendered a take-nothing summary judgment against Airport
on all of its claims. We will affirm the judgment of the district court. (1)



BACKGROUND


 In December 1986, Airport purchased a 22-acre tract of Austin land from
Featherlite (the original transaction). Airport paid part of the purchase price in cash and signed
a promissory note in the principal amount of $1,940,737.17 for the remainder. The note provided
for interest at 10 percent per annum and contained a usury savings clause. As security for the
note, Airport executed a deed of trust covering approximately 14 acres from the tract. The
remaining approximately 8 acres were excluded from the deed of trust at Airport's request so it
could secure additional financing from third parties. To protect Featherlite for the reduced deed-of-trust coverage, Airport executed an option agreement which would allow Featherlite to buy
back the 8 acres at a substantially reduced price if Airport defaulted on the note.

 After the original contract was signed, Airport asked Featherlite to agree to
repurchase a 5.7-acre portion of the 22-acre tract if Airport met certain conditions (the
reconveyance). Featherlite was to give Airport a credit on the promissory note based on the sales
price of the 5.7-acre tract. Much of the controversy turns on the meaning of the phrase "net
square feet" as used in the various agreements. (2) 

 The reconveyance was originally scheduled for August 31, 1987. The parties later
agreed to reschedule the closing to November 19, 1987. The reconveyance did not close,
however, because the parties disagreed as to whether Airport had satisfied all of the specified
conditions, and also differed as to the amount of credit Airport should receive on the $1.9 million
note.



DISCUSSION


A.   Usury

 First, Airport asserts that the option contract rendered the original transaction
usurious. The option contract allowed Featherlite to repurchase approximately 8 acres from the
22-acre tract for $371,945.40 if Airport defaulted on the note. Airport alleges that the
approximate value of the option tract, at the time of the original transaction, was $1,119,341.40, 
approximately $750,000 more than Featherlite would pay if it exercised the option. The option
contract did not obligate Featherlite to give Airport a credit on the note for the difference between
the fair market value of the property and the purchase price. Airport contends that this difference
is part of the compensation for the promissory note and so is "interest" which must be added to
the nominal interest charged under the note, yielding an interest rate which exceeds the legal
maximum. (3) We disagree.

 Usury is interest in excess of the amount provided by law. Tex. Rev. Civ. Stat.
Ann. art. 5069-1.01(d) (1987). A person who contracts for, charges, or receives interest in
excess of the legal amount may be liable for certain penalties, including forfeiture of interest and
even principal. Tex. Rev. Civ. Stat. Ann. art. 5069-1.06 (1987). The usury statutes are penal
in nature and so are to be strictly construed. Houston Sash & Door Co. v. Heaner, 577 S.W.2d
217, 222 (Tex. 1970).

 It is undisputed that Featherlite did not charge or receive usurious interest. Thus,
the question is whether Featherlite contracted for interest in excess of the legal amount. We
conclude that the option contract was not a contract for usurious interest. Rather, it was security
for Airport's debt to Featherlite. During negotiations for the original transaction, Airport asked
Featherlite to limit its deed of trust lien to 14 of 22 acres so that Airport could use the remaining
acreage as collateral for a loan from another party. Airport was a newly-formed corporation with
little capital and the 22 acres would be its only asset. The land Airport wanted free and clear of
interests represented nearly 40 percent of the property being conveyed. Moreover, Airport's sole
shareholder would not personally guarantee the note. For all of these reasons, Featherlite insisted
on some security with respect to the 8 acres. The parties agreed that Featherlite would have the
option to repurchase the 8 acres at a reduced price if Airport defaulted. Thus, the option contract
secured Airport's obligation, and the value of the option contract is not "interest." See Bruner
v. Republic Supply Co., 416 F.2d 763, 766 (5th Cir. 1969) (difference between bid at a
foreclosure sale and fair market value of property is not "interest").

 Airport relies on several cases which hold that options give rise to "interest." See
Cochran v. American Sav. & Loan Ass'n, 568 S.W.2d 672, 677 (Tex. Civ. App. 1978), reformed,
586 S.W.2d 849 (Tex. 1979); Gulf At. Life Ins. Co. v. Price, 566 S.W.2d 381, 384 (Tex. Civ.
App. 1978, writ ref'd n.r.e.); Bomar v. Smith, 195 S.W 964, 978 (Tex. Civ. App. 1917, no writ). 
These cases are readily distinguishable because in each case the option was not security for the
debt involved and the creditor had an unconditional right to exercise the option. The value of the
option was, therefore, part of the compensation for the loan. In this cause, on the other hand, the
option merely protected Featherlite in the event Airport defaulted on the note and was given
because Airport wanted that portion of the property released from the deceptive trade coverage.



b.   Breach of Contract

 Airport next argues that there are material issues of fact regarding a claimed breach
of contract by Featherlite. Airport's claim again centers on a disagreement over the term "net
square feet" and the correct reading of the Reconveyance Contract. (4)

 Under Airport's interpretation, it would receive a credit on its purchase-money note
of almost $600,000 while according to Featherlite the credit would be less than $500,000. The
trial court agreed with Featherlite and ruled that Airport had no breach of contract claim. We
agree.

 The term "net square feet" is both used and defined in the earnest money contract. 
It is again used in the Second Amendment to that contract which incorporates the definition in the
earnest-money contract. However, in the Reconveyance Contract, the term is used without
definition or limitation. Since the Reconveyance Contract is only one in a series of related
contracts, the trial court was correct in applying the "integrated contract rule" and concluding that
the same definition of "net square feet" applied in all three writings. See U.S. Life Title Co. v.
Andreen, 644 S.W.2d 185, 190 (Tex. App. 1982, writ ref'd n.r.e.).

 By demanding that the credit be figured on an erroneous basis, Airport effectively
refused to perform the Reconveyance Contract and thus excused Featherlite from its obligations. 
Airport ran the risk that its interpretation was wrong and cannot now charge Featherlite with a
breach. See Corso v. Carr, 634 S.W.2d 804, 808 (Tex. App. 1982, writ ref'd n.r.e.).



c.   Fraud and DTPA Violations

 In its third and fourth points of error, Airport charges Featherlite with both fraud
and DTPA violations. In its pleadings, Airport complained of three misrepresentations and one
omission, all arising from the Reconveyance Contract.

 Airport argues that when it decided not to close the original contract and to forfeit
its $300,000 in earnest money, Featherlite fraudulently induced it to close the deal and enter into
the Reconveyance Contract. The claimed fraud was in connection with the platting of the
Reconveyance Property and whether access from only 12th Street was required. We disagree. 
The Reconveyance Contract expressly provided that Featherlite was to furnish a site plan for the
property in question. Featherlite did so, the site plan called for access from both 12th and 13th
streets, and the possibility that additional access would be required is borne out by the summary
judgment proof.

 The 13th Street requirement was apparently not a problem for Airport until the deal
began to crater -- the site plan called for the 13th street access and was delivered to Airport in
December of 1986, and the Reconveyance Contract was amended and confirmed by Airport in
August 1987. The 13th Street requirement could not have been a surprise -- the Reconveyance
tract was next to 13th Street, the tract was long and narrow at that point, and the trucks using a
brick storage facility could not turn around and would need two ways in and out of the property.

 Further, it is clear that the parties knew that Featherlite was to prepare an in-house
study of its needs for the Reconveyance tract as a brick storage facility, and that the exact
requirements had not been developed. They knew some specification had yet to be determined,
so no misrepresentation as to those yet-to-be developed needs could be made.

 Finally, there is no proper summary-judgment proof showing personal knowledge
by Airport's president that would support the fraud claim. See Brownlee v. Brownlee, 665
S.W.2d 111, 112 (Tex. 1984). 

 


CONCLUSION


 All of Airport's points of error are overruled. The judgment of the district court
is affirmed.



 

 Jimmy Carroll, Chief Justice

[Before Chief Justice Carroll, Justices Jones and B. A. Smith]

Affirmed

Filed: May 27, 1992

[Do Not Publish]
1.   The rules for appellate review of a summary judgment are well known. We first
determine whether a disputed material fact issue exists. We accept as true the nonmovant's
version of the facts shown by the record and the admissible summary-judgment proof. Every
reasonable inference is indulged in favor of the nonmovant and any doubt resolved in his favor. 
Nixon v. Mr. Property Management Co., 690 S.W.2d 546 (Tex. 1985); Bayouth v. Lion Oil Co.,
671 S.W.2d 867 (Tex. 1984). See generally David Hittner, Summary Judgments in Texas, 22
Hous. L. Rev. 1109 (1985).
2.   The phrase is defined in the original earnest money contract as the "total number of
gross square feet . . . less all area . . . contained within any . . . roadway, . . . street,
easement, or . . . right-of-way." The contract provides also that the purchase price will be
adjusted up or down based on the "net square feet" found in the survey. Interestingly, the
earnest money contract limits the amount of reduction allowed for the areas in the roadways,
et cetera to no more than 1 percent of one tract and 2 percent of another, while the
Reconveyance Contract has no limit on the amount the reduction for "net square feet" can
reduce the amount of credit on the $1.9 million note.
3.   Featherlite apparently does not contest Airport's assertion that adding the $750,000 to
the nominal interest rate produces a rate which exceeds the usury ceiling. Because we decide
that the transaction was not usurious, we will not address the calculations and will instead
assume that Airport is correct.
4.   See footnote 2, supra.