In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
NO. 09-22-00324-CV

**IN RE FIRST FINANCIAL BANK N.A. AND CANDACE EMMERICH**

**Original Proceeding**
**284th District Court of Montgomery County, Texas**
**Trial Cause No. 21-09-12834-CV**

**MEMORANDUM OPINION**

Jason Butler shot his wife Rachel then committed suicide. Rachel Butler survived and sued Relators, First Financial Bank N.A., (the "Bank") and its loan officer, Candace Emmerich, alleging that Jason suffered mental pain and stress associated with the construction of the Butlers' home, including wrongful acts by the builder that the Bank made possible by its acts and omissions as the construction lender. The Bank and Emmerich filed motions to dismiss under Rule 91a and now seek mandamus relief against the judge who denied their motions. We stayed further

proceedings in the trial court and requested a response from the Real Party in Interest, Rachel Butler. We conditionally grant partial relief.

## Background

Rachel Butler, acting individually and as heir and personal representative of Jason's estate, and as next friend of their three minor children, asserted claims for: (1) wrongful death and survival; (2) fraud, statutory fraud, and fraud by non-disclosure; (3) knowing participation in a breach of fiduciary duty; (4) civil conspiracy; (5) violations of the Fair Credit Reporting Act, Texas Debt Collection Act, and Deceptive Trade Practices Act; and (6) breach of contract. First Financial and Emmerich filed Rule 91a motions to dismiss all claims except Butler's claims for breach of contract. The Honorable Judge Kristin Bays granted the motions to dismiss, but she later voluntarily recused herself from the case and the judge assigned to the case granted Butler's motion to reconsider, reinstated the dismissed claims, and denied the Bank's and Emmerich's motions to dismiss. The Bank and Emmerich challenge that ruling in a mandamus petition.

## Mandamus Standard

We may issue a writ of mandamus to remedy a clear abuse of discretion by the trial court when the relator lacks an adequate remedy by appeal. *See In re*

2

*Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135-36 (Tex. 2004) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 839-40 (Tex. 1992) (orig. proceeding).

## Rule 91a

Rule 91a authorizes trial courts to dismiss a case that "has no basis in law or fact." Tex. R. Civ. P. 91a.1. "A motion to dismiss must state that it is made pursuant to this rule, must identify each cause of action to which it is addressed, and must state specifically the reasons the cause of action has no basis in law, no basis in fact, or both." Tex. R. Civ. P. 91a.2. The trial court must decide the Rule 91a motion based solely on the pleading of the cause of action, together with the attached pleading exhibits. *See* Tex. R. Civ. P. 91a.6. "We review the merits of a Rule 91a ruling de novo; whether a defendant is entitled to dismissal under the facts alleged is a legal question." *In re Farmers Tex. Cty. Mut. Ins. Co.*, 621 S.W.3d 261, 266 (Tex. 2021) (orig. proceeding). "Mandamus relief is appropriate when the trial court abuses its discretion in denying a Rule 91a motion to dismiss." *Id*.

We apply the fair notice standard of pleading to determine if the cause of action has a basis in law or fact. *In re Baytown Apt. Grp., LLC*, No. 09-22-00186-CV, 2022 WL 2720456, at *1 (Tex. App.—Beaumont July 14, 2022, orig. proceeding) (mem. op.); *see also* Tex. R. Civ. P. 47(a) ("An original pleading which sets forth a claim for relief . . . shall contain: []  a short statement of the cause of

3

action sufficient to give fair notice of the claim[.]"). We construe the pleadings liberally in favor of the plaintiff, look to the pleader's intent, and accept as true the factual allegations in the pleadings. *In re Baytown Apt. Grp., LLC*., 2022 WL 2720456, at *1. "The pleadings must give notice, not only of the claim and the relief sought, but also of the essential factual allegations sufficient to enable the defendant to prepare a defense." *Id*. "We inquire whether the defendant can ascertain from the pleading the nature and basic issues of the controversy and what testimony will be relevant." *Id*.

Wrongful Death and Survival

In their motions to dismiss, the Bank and Emmerich argued in part that Butler's wrongful death claims lack a basis in fact "because no reasonable person could believe that [their] acts or omissions concerning the construction loan were a substantial factor in bringing about the death of Jason Butler by suicide." They argued the only fact Butler alleged relating to Jason's death is, "Jason Butler, overwhelmed with the stress of Defendants' actions and omissions, shot Rachel Butler and then shot himself." They argued the claims lack a basis in law because Butler's pleading failed to demonstrate a viable, legally cognizable right to relief.

Butler amended her petition, in part to further describe the causation element in her wrongful death and survival claims, as follows:

4

The home that was to be constructed was supposed to be the home where Rachel and Jason raised their family; instead, the home became a nightmare. The construction of the house at issue, and Defendants' mishandling of Plaintiffs' loan proceeds, understandably caused Rachel and Jason a high degree of mental pain and distress, and it had an adverse impact on their marriage. On or about November 12, 2017, Jason Butler, overwhelmed by the stress of Defendants' actions and omissions, described above, shot Rachel Butler, and then shot himself. Rachel survived; Jason did not. The stress and grief caused by Bentley Builder and Defendants, described above, produced such a rage or frenzy or impulse in Jason to the point he ended his life and tried to end his wife's life, which would not have existed but for Defendants' actions that they committed directly and in concert with Bentley Builder.

Butler argues she asserted "allegations about the mental pain and stress associated with the construction of her home that went sideways, including how tens of thousands of dollars went missing, which was all made possible by Relators' actions and omissions." She further argues "a reasonable person could believe Relators had a hand in causing the mental anguish at issue." She argues her petition states a cause of action for suicide caused by a third party's tortious conduct within Section 455 of the Restatement (Second) of Torts, which the Texas Supreme Court adopted in 1975. *See Exxon Corp. v. Brecheen*, 526 S.W.2d 519, 524 (Tex. 1975) (adopting Restatement (Second) of Torts § 455 (1965) Acts Done During Insanity Caused by Negligent Conduct). "If the actor's negligent conduct so brings about the delirium or insanity of another as to make the actor liable for it, the actor is also

5

liable for harm done by the other to himself while delirious or insane, if his delirium or insanity (a) prevents him from realizing the nature of his act and the certainty or risk of harm involved therein, or (b) makes it impossible for him to resist an impulse caused by his insanity which deprives him of his capacity to govern his conduct in accordance with reason." *Id.*

In *Brecheen*, a tank truck driver with no prior history of mental illness was injured by being sprayed on the face with oil on Exxon's premises. *Id*. at 520. Exxon did not challenge the jury finding that Exxon's negligence proximately caused the oil spray incident. *Id*. at 521. Brecheen's wife testified that he behaved strangely after the accident. *Id*. Three months later, a family medical practitioner with special training in psychiatry diagnosed Brecheen's condition as a conversion reaction with an underlying schizophrenic reaction. *Id.* at 521-22. A psychiatrist who treated Brecheen testified that the stress and intense fear experienced by Brecheen was probably related to the fear that he was going to die, or be blind, or that he was going to be brain damaged from the oil spray incident. *Id*. These thoughts had a paranoid tenor. *Id*. Both doctors expressed the opinion that there was a causal relationship between the schizophrenia and the oil spray injury. *Id*. The family medical practitioner expressed the further opinion that there was a causal relationship between the oil spraying injury and the suicide. Noting the lack of indication that

6

"Brecheen was suffering undue pain or was subject to pressures from which an individual would incline to free himself by self-destruction[,]" the Court concluded "there is evidence that Brecheen's state of mind was such that the fact finders could conclude that he no longer possessed the capacity to govern his conduct and was acting under an uncontrollable impulse when he destroyed himself." *Id*. at 522. Under the circumstances of that case, where the oil spray incident caused an immediate and permanent psychotic break unalleviated by subsequent treatment and hospitalization, the plaintiff established cause in fact of the injured person's eventual suicide.

"Cause in fact is established when the act or omission was a substantial factor in bringing about the injuries, and without it, the harm would not have occurred." *IHS Cedars Treatment Center of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 799 (Tex. 2004). A defendant's conduct may be too attenuated to be a substantial factor in bringing about the harm. *Id*. Where the initial act of negligence was not the active and efficient cause of the plaintiff's injuries, but merely created the condition by which the second wrongful act could occur, the resulting harm is too attenuated from the defendants' conduct to constitute the cause in fact of the plaintiff's injuries. *Id*. Such is the case here. Relators' alleged mishandling of the loan proceeds created the condition under which Jason's suicide occurred but did not supply the active and

7

efficient cause of the injury. We conclude this claim has no basis in law or in fact. The resulting harm is too attenuated from the defendants' conduct to constitute the cause in fact of the plaintiff's injuries. Therefore, the trial court abused its discretion by reinstating the wrongful death and survival claims related to Jason Butler's death and denying the motions to dismiss those claims.

Fraud, Statutory Fraud, and Fraud by Non-Disclosure

Butler alleged Bentley Builder, LLC engaged in statutory and common law fraud by making false representations of past and existing material facts with the assistance and assent of the Bank and Emmerich. Butler alleged the Bank and Emmerich approved and paid Bentley Builder for "extra work" not authorized under the parties' agreement, approved and paid construction payments that were not supported by proper documentation, approved and paid disbursements that were not in accordance with the parties' agreements, made improper construction loan advances and allowed Bentley Builder and its principals to direct funds to uses other than their intended use, failed to detect Bentley Builder's commingling of funds and fraudulent transfers of Butlers' construction funds out of an account held at the Bank, either failed to conduct inspections of the property in accordance within industry standards or ignored the inspection results, failed to provide audits of the construction proceeds, and committed errors, omissions, and other deficiencies in

8

breach of the parties' agreements. Butler alleged the Bank and Emmerich are vicariously liable for Bentley Builder's fraud because their non-disclosure of Bentley Builder's fraud benefitted them financially and they further benefitted from the referral of new customers and collection of fees, interest and other loan charges. Butler alleged the Bank and Emmerich failed to disclose to Butler that Bentley Builder engaged in a kiting or pyramid scheme and failed to disclose that Bentley Builder took unearned draws without Butler's approval and without exercising the Bank's right to ensure Bentley Builder actually performed the work. Butler alleged the Bank and Emmerich had a duty to disclose these material facts because they created a false impression by making a partial disclosure or by voluntarily disclosing some information when they knew Butler was ignorant of and did not have an equal opportunity to discover the facts.

1. Statutory Fraud

The motions to dismiss filed by the Bank and Emmerich argued that Butler's statutory fraud claims should be dismissed because section 27.01 of the Business and Commerce Code does not apply to construction loans. Fraud in a transaction involving real estate consists of a false representation of a past or existing material fact, when the false representation is made to a person for the purpose of inducing that person to enter into a contract and the false representation is relied on by that

person in entering into that contract. *See* Tex. Bus. & Com. Code Ann. § 27.01(a). The equitable provision of section 27.01(d), which prevents parties from keeping the benefit of a fraud, cannot be applied to transactions outside the scope of the statute. *Greenway Bank & Trust v. Smith*, 679 S.W.2d 592, 596 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.).

In the response to the mandamus petition, Butler denies that Relators have been sued for "direct fraud," and Butler argues Emmerich and the Bank are vicariously liable for Bentley Builder's fraud. All the alleged misrepresentations and failures to disclose referred to in Butler's petition relate to the disbursal of the construction funds and could not, as a matter of law, have induced Butler to enter into the contract Butler executed for the purchase of real estate, so Butler has no viable claim against the Bank and Emmerich for statutory real estate fraud. We conclude the trial court abused its discretion by reinstating Butler's statutory fraud claims against the Bank and Emmerich and in denying the motions to dismiss as to this claim.

2. Common Law Fraud

Butler alleged that the arbitrator found Bentley Builder breached its fiduciary and contractual obligations to Butler and the Bank by commingling funds into a personal account, falsifying affidavits of bills paid prior to receiving construction

10

draw funds from the Bank and improperly filing a lien after having waived the right in favor of the Bank. The Bank and Emmerich moved to dismiss Butler's common law fraud claims on the ground that Butler failed to allege the Bank and Emmerich made misrepresentations that either they knew were false or that they made recklessly as a positive assertion and without knowledge of its truth.

In response to the Rule 91a motions to dismiss, Butler argued the Bank and Emmerich were vicariously liable for Bentley Builder's fraud because they knew about and benefitted from the fraud. In an amended petition that Butler filed after the Bank and Emmerich filed their motions to dismiss, the acts and omissions Butler alleged give rise to the Bank's and Emmerich's vicarious liability for Bentley Builder's fraud are identical to the acts Butler alleged for the claim against the Bank for breach of contract. In their responses to Butler's motion for the trial court to reconsider the original judge's order dismissing the fraud claims, the Bank and Emmerich argued that Butler failed to give fair notice of the common law fraud claims because the allegations sounded in contract and not in fraud.

To maintain an action for common law fraud, the plaintiff must establish a violation of a tort duty independent of the fact that a contract exits between the parties. *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex.1991). The alleged wrongful act of Bentley Builder was the "looting of Plaintiffs' construction funds."

11

The acts and omissions that Butler claims establish the Bank's and Emmerich's vicarious liability for Bentley Builder's fraud are identical to the alleged breaches of contract by the Bank. The alleged benefit the Bank and Emmerich received, the collection of fees, interest and other loan charges, also arise from the loan agreement. The mere failure to perform a contract is not evidence of fraud. *Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998).

In their mandamus petition, Relators argue Butler's allegations pertain to the Bank's contractual obligations and Butler fails to describe what facts put the Bank on notice that Bentley Builder was committing fraud. Butler's own pleadings assert that the fact-finder in the arbitration of Butler's claims against Bentley Builder found the Bank was a victim of Bentley Builder's wrongful acts, not a co-conspirator. Butler did not allege that the Bank and Emmerich knew Bentley Builder supplied a false affidavit of bills paid when the funds were disbursed. Instead, Butler alleged they failed to audit the construction loan proceeds and failed to detect fraudulent transfers out of an account at the Bank. Butler has failed to state a viable claim for common law fraud against the Bank and Emmerich. We conclude the trial court abused its discretion by reinstating Butler's common law fraud claims against the Bank and Emmerich and denying their motions to dismiss.

12

3. Fraud by Non-Disclosure

Butler alleged that when issues arose with the quality of Bentley Builder's work, Rachel Butler asked Emmerich for proof of approved change orders and asked Emmerich why the Bank would pay an invoice twice. Butler alleged, "Emmerich responded by saying the bank funds based on the work that is completed on the draw inspection sheet, not the invoices, but she failed to provide any sufficient explanation to Plaintiff Rachel Butler's inquiry." Butler alleged Emmerich failed to provide a sufficient response to Butler's request for copies of the change orders that Butler had not signed. Butler alleged that in another meeting addressing accounting discrepancies, the Bank and Emmerich failed to resolve Butler's query about having to pay subcontractors "when the builder already pocketed the money." According to Butler, the Bank was aware and Butler was unaware that Bentley Builder was highly leveraged and used Butler's construction funds to pay high interest loans.

Butler alleged:

Defendants First Financial Bank and Emmerich also failed to disclose that Bentley Builder was engaged in a kiting or pyramid scheme with Plaintiffs' constructions funds, using those funds to pay high–interest loans. Defendants First Financial Bank and Emmerich further failed to disclose that Bentley Builder had open checkbook with the Plaintiffs' construction funds, taking unearned draws without Plaintiffs' approval and without Defendant First Financial Bank exercising its right to ensure that Bentley Builder actually performed the work. Defendants First Financial Bank and Emmerich had a duty to disclose these

13

material facts to Plaintiffs because they created a false impression by making a partial disclosure or voluntarily disclosing some information, and therefore, Defendants First Financial Bank and Emmerich had a duty to disclose the whole truth. Defendants First Financial Bank and Emmerich knew that Plaintiffs were ignorant of these facts and that Plaintiffs did not have an equal opportunity to discover these facts. That is, Defendants First Financial Bank and Emmerich were deliberately silent when they had a duty to speak. By failing to disclose facts, Defendants First Financial Bank and Emmerich intended to induce Plaintiffs into transactions they would not have otherwise entered.

In their motions to dismiss, the Bank and Emmerich argued Butler's claims for fraud by non-disclosure lack a basis in law because she failed to allege what partial disclosure or voluntary disclosure that triggered a duty to disclose the whole truth. A failure to disclose information will not support a fraud claim in the absence of a duty to disclose. *Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001). "[S]ilence may be equivalent to a false representation only when the particular circumstances impose a duty on the party to speak and he deliberately remains silent." *Id*. "Whether such a duty exists is a question of law." *Id*.

A claim has no basis in law under Rule 91a when the petition either alleges too few facts to demonstrate a viable, legally cognizable right to relief, or the petition alleges additional facts that, if true, bar recovery. *Guillory v. Seaton, LLC*, 470 S.W.3d 237, 240 (Tex. App.—Houston [1st Dist.] 2015, pet. denied). The information that Butler alleged Emmerich and the Bank failed to disclose is that

14

Bentley Builder was using construction loan proceeds to pay high interest loans and that the Bank was not exercising its right to ensure that Bentley Builder actually performed the work. The information that Butler alleged left a false impression was Emmerich's statement that the Bank funds based on the work completed on the draw inspection sheet and Emmerich's failure to resolve Butler's inquiry regarding having to pay subcontractors after Bentley Builder had been paid for the work. None of the statements attributed to Emmerich in the petition suggest that Bentley Builder was financially sound. Butler did not allege that Emmerich's statement about funding based on the draw inspection report left a false impression that the Bank was exercising its right to ensure that Bentley Builder actually performed the work. We conclude the trial court abused its discretion by reinstating Butler's claims for fraud by non-disclosure, which lacked an adequate basis in law, and by denying the motions to dismiss.

Knowing Participation in a Breach of Fiduciary Duty

Butler alleged that a judgment has been entered against Bentley Builder for its breach of fiduciary duty. Butler alleged the Bank and Emmerich knew or should have known that Bentley Builder owed a fiduciary duty to Butler. The acts that Butler alleged as the knowing participation in Bentley Builder's breach of fiduciary duties are the identical acts that Butler alleged as the breach of contract by the Bank.

15

The Bank's and Emmerich's motions to dismiss argued that Butler's petition failed to plead any facts to establish that they knew Bentley Builder was breaching its fiduciary duties to Butler. Butler alleged that the Bank and Emmerich knowingly participated in Bentley Builder's breach of fiduciary duty by paying Bentley Builder for "extra work" not authorized under the parties' agreement, making construction payments that were not supported by proper documentation, making disbursements that were not in accordance with the parties' agreements, making improper construction loan advances and allowing Bentley Builder and its principals to direct funds to uses other than their intended use, failing to detect Bentley Builder's commingling of funds and fraudulent transfers of Butler's construction funds out of an account held at the Bank, either failing to conduct inspections of the property in accordance within industry standards or ignoring the inspection results, failing to provide audits of the construction proceeds, and committing errors, omissions, and other deficiencies in breach of the parties' agreements. Butler did not allege how any of these acts establish that the Bank and Emmerich had actual awareness that Bentley Builder was breaching its fiduciary duties to Butler and that they were participating in the breach. In fact, Butler alleged they failed to detect Bentley Builder's commingling of funds and fraudulent transfers of Butlers' construction funds out of an account held at the Bank. Allegations that the Bank and Emmerich made

16

payments that were not supported by proper documentation and failed to conduct inspections do not provide fair notice to the defendants of the acts relied upon to establish their knowing participation in the alleged breach of fiduciary duty. We conclude the trial court abused its discretion by reinstating Butler's claims for knowing participation in a breach of fiduciary duty and denying the motions to dismiss.

## Civil Conspiracy

Butler alleged that the Bank and Emmerich "assisted, aided, and abetted Bentley Builder's fraudulent transfer of Butler's construction funds[.]" Butler alleged the Bank and Emmerich made Bentley Builder's fraudulent transfers of the construction funds possible by approving and paying Bentley Builder construction payments that were not supported by proper documentation, including receipts and releases from subcontractors, so that no liens would be filed against the property; by approving and paying disbursements that were not in accordance with the parties' agreements; by failing to deposit construction funds in a joint bank account held by Bentley Builder and Rachel and Jason Butler; by making improper construction loan advances and allowing Bentley Builder and its principals to direct the funds to uses other than their intended use; by failing to detect Bentley Builder's commingling of funds and fraudulent transfers of the Plaintiffs' construction funds out of a bank

17

account held at the Bank; by either failing to conduct inspections of the property in accordance with regular industry standards or by ignoring the inspection results, and by advancing or disbursing funds even though the Bank knew or should have known that work had not been performed; by failing to provide audits of the construction loan proceeds; and by handling the construction funds in a manner that breached the parties' agreements. Butler alleged these same acts assisted, aided, and abetted Bentley Builder's commission of common law and statutory fraud, Bentley Builder's breach of fiduciary duty, and aided and assisted Bentley Builder's violation of Chapter 162 of the Property Code. *See generally* Tex. Prop. Code Ann. §§ 162.001-.033 (Construction Payments, Loan Receipts, and Misapplication of Trust Funds).

"An action for civil conspiracy has five elements: (1) a combination of two or more persons; (2) the persons seek to accomplish an object or course of action; (3) the persons reach a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts are taken in pursuance of the object or course of action; and (5) damages occur as a proximate result." *First United Pentecostal Church of Beaumont v. Parker*, S.W.3d 214, 222 (Tex. 2017). "An actionable civil conspiracy requires specific intent to agree to accomplish something unlawful or to accomplish something lawful by unlawful means." *Id*. "Thus, an actionable civil conspiracy

18

exists only as to those parties who are aware of the intended harm or proposed wrongful conduct at the outset of the combination or agreement." *Id.*

In their motions to dismiss, the Bank and Emmerich argued Butler failed to plead even one of the elements of civil conspiracy and failed to identify the alleged unlawful act that forms the basis of the conspiracy claim. Butler amended her petition to state:

> Here, all elements of a civil conspiracy are present: (1) there was a combination of two or more persons, (2) who agreed on an object to be accomplished, (3) a meeting on [sic] the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages resulting from the conspiracy.

Butler listed the elements of a claim for civil conspiracy but failed to provide the essential factual allegations of the civil conspiracy. Butler did not allege that at the outset of the agreement that the Bank and Emmerich intended and agreed that Bentley Builder would draw the funds without performing the work, paying the subcontractors, or obtaining change orders. The pleadings failed to provide fair notice of the civil conspiracy claim. *See In re Baytown Apt. Grp., LLC.*, 2022 WL 2720456, at *1. Therefore, the trial court erred by reinstating Butler's civil conspiracy claims and denying the motions to dismiss.

19

Fair Credit Reporting Act

Butler also alleged the Bank violated the Fair Credit Reporting Act ("FCRA") by wrongfully and inaccurately reporting that Rachel Butler had failed to pay her construction loan. Butler alleged the Bank refused to remove or otherwise correct the incorrect credit reporting, for which she sought actual damages, including increased cost of credit, and statutory damages of not less than $100 and not more than $1000 for each violation, and attorney's fees.

The Bank moved to dismiss this claim under Rule 91a on the ground that the FCRA does not create a private cause of action for a violation of the credit reporting accuracy and investigation requirements by a furnisher of credit information. *See generally* 15 U.S.C.A. § 1681s-2(a), (c)(1). The Bank acknowledged the existence of a private cause of action regarding the duties of furnishers of credit information upon notice of a dispute under section 1681s-2(b), but argued Butler failed to state a claim under section 1681s-2(b), because she failed to allege that any credit reporting agency ever notified the Bank of a dispute.

After the Bank filed its motion to dismiss, Butler amended her petition to allege that "[d]espite Plaintiff Rachel Butler's multiple disputes of this derogatory credit reporting, both directly to First Financial Bank and to all three major credit bureaus, who, upon information and belief forwarded Rachel's dispute to the Bank,

20

Defendant First Financial Bank refused to remove or otherwise correct the incorrect credit reporting." The Bank responded that Butler's allegations "primarily support a claim for which there is no private cause of action."

In the mandamus petition, Relators argue Butler's FCRA claim lacks an adequate basis in law because Butler failed to identify any inaccurate information that should have been corrected. We disagree. Butler's amended petition identified the alleged wrongful act and described how the act allegedly violated the statute. This is sufficient to give fair notice of the claim involved. *See* Tex. R. Civ. P. 47(a). Butler stated a claim in her pleadings under section 1681s-2(b) of the FCRA. Accordingly, the trial court did not abuse its discretion by reinstating Butler's section FCRA claim against the Bank and denying the Bank's motion to dismiss on this claim.

#### Texas Debt Collections Act and Deceptive Trade Practices Act

In the Plaintiff's Original Petition, Butler alleged:

First Financial Bank's conduct in refusing to investigate, negligently investigating, generally negligent handing of Butler's account, and sending false and misleading information to credit bureaus, was fraudulent, deceptive, and misleading and therefore, constitute violations of the Texas Debt Collection Act. Plaintiff Rachel Butler seeks her actual damages, statutory fines, and attorney fees, as well as a permanent injunction commanding Defendant First Financial Bank to remove the derogatory credit information being incorrectly reported. And because Defendant First Financial Bank's actions and omissions were committed knowingly or intentionally, Plaintiff Rachel Buter [sic] is entitled to recover treble damages and mental anguish damages under

21

the tie-in provision set forth in the Texas Debt Collection Act and Texas Deceptive Trade Practices Act.

The Bank moved to dismiss the claims Rachel Butler brought under the Texas Debt Collections Act ("TDCA") and Deceptive Trade Practices Act ("DTPA"). The Bank argued the FCRA pre-empted Butler's claims under the TDCA and DTPA. The Bank also argued Butler failed to state a claim under the TDCA because she failed to identify the provision of Chapter 392 of the Texas Finance Code that the Bank purportedly violated. Additionally, the Bank argued Butler lacked standing to bring a claim under the DTPA because she did not allege that she acquired goods and services as required to qualify as a consumer under the DTPA. *See* Tex. Bus. & Com. Code Ann. § 17.45.

In response to the Bank's motion to dismiss, Butler filed an amended petition that alleged that the Bank's actions violated Finance Code Sections 392.301(a)(3) (a debt collector may not use threats, coercion, or attempts to coerce by "representing or threatening to represent to any person other than the consumer that a consumer is wilfully refusing to pay a nondisputed consumer debt when the debt is in dispute and the consumer has notified in writing the debt collector of the dispute[]"), 392.304(a)(8) (a debt collector may not use a fraudulent, deceptive, or misleading representation "misrepresenting the character, extent, or amount of a consumer

22

debt[]"), and 392.304(a)(19) (a debt collector may not use a fraudulent, deceptive, or misleading representation "using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer[]"). *See* Tex. Fin. Code Ann. §§ 392.301(a)(3), 392.304(a)(8), (19).

In their mandamus petition, the Bank and Emmerich argue the FCRA preempts Butler's TDCA and DTPA claims against the Bank. In response, Butler argues the claim cannot be dismissed under Rule 91a because the Bank failed to assert federal preemption as an affirmative defense in its original answer. Rule 91a does not limit the court's legal inquiry into the plaintiff's pleading. *Bethel v. Quilling, Selander, Lownds, Winslett & Moser, P.C.*, 595 S.W.3d 651, 656 (Tex. 2020). Rule 91a permits motions to dismiss based on affirmative defenses "'if the allegations [in the plaintiff's pleadings], taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought.'" *Id*. The Bank asserted federal preemption in its Rule 91a motion to dismiss.

The FCRA imposes duties on furnishers of information to provide accurate information to credit bureaus and to investigate upon receiving notice of a dispute. *See* 15 U.S.C.A. § 1681s-2(a), (b). With a few exceptions inapplicable here, the FCRA preempts state statutes with respect to the providing of information and investigating disputes about information provided to credit reporting agencies. *See*

23

15 U.S.C.A. § 1681t(b)(1)(F) ("No requirement or prohibition may be imposed under the laws of any State—(1) with respect to any subject matter regulated under—(F) section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies[.]"). All of the facts alleged in support of Butler's TDCA and DPTA claims concern how the Bank furnished information to credit bureaus and how the Bank failed to investigate Butler's credit reporting dispute. Butler alleged claims that clearly fall within the FCRA preemption. Accordingly, we conclude the trial court erred by reinstating Butler's claim under the TDCA and DTPA.

## Conclusion

The trial court abused its discretion by reinstating claims and by denying the motions to dismiss as to claims that lacked an adequate basis in law. "'The adequacy of an appellate remedy must be determined by balancing the benefits of mandamus review against the detriments.'" *In re Essex Ins. Co.*, 450 S.W.3d 524, 528 (Tex. 2014) (orig. proceeding). We conclude that mandamus relief is appropriate to spare the parties and the public the time and money spent on fatally flawed proceedings. *See id*.

We are confident that, with the exception of Butler's Fair Credit Reporting Act claim against the Bank, the trial court will vacate its order of September 5, 2022,

24

which granted Butler's Motion to Reconsider and Reinstate, set aside its prior orders reinstating Butler's claims against the Bank and Emmerich, and denying the Bank's and Emmerich's Rule 91a motions to dismiss, and will grant the Bank's and Emmerich's motions to dismiss Butler's claims for wrongful death and survival, fraud, statutory fraud, fraud by non-disclosure, knowing participation in a breach of fiduciary duty, civil conspiracy, Texas Debt Collection Act violations, and Deceptive Trade Practices Act violations. A writ of mandamus will issue only if the trial court fails to comply.

PETITION CONDITIONALLY GRANTED IN PART.

PER CURIAM

Submitted on January 6, 2023
Opinion Delivered July 27, 2023

Before Golemon, C.J., Johnson and Wright, JJ.

25